**WEST et al. v. PETERS et al. (No. 8876.)**

(Court of Civil Appeals of Texas. Galveston. June 24, 1926. Rehearing Denied Oct. 7, 1926.)

1. **Adverse possession** ⬉65(2).

In trespass to try title, where defendant occupying land in question thought state owned it, court should have peremptorily instructed verdict for plaintiffs on issue of adverse possession under ten-year statute.

2. **Trial** ⬉215.

Where court submitted special issues on defense of adverse possession, it was not error to make explanation of what would constitute elements of such defense under a given state of facts, in view of Rev. St. 1925, art. 2189.

3. **Appeal and error** ⬉1070(2).

Where apparent conflict in jury's answers to special issues does not relate to material issue in cause, judgment will not be reversed.

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Appeal and error ⚶742(1).**

Where proposition does not cite any assignment to which it is germane, as required by rules for briefing, it should not be considered.

**5. Appeal and error ⚶930(3).**

Where defendants did not request submission of issue on question of improvements in good faith, it is presumed that court found against appellants on said issue, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1985.

**6. Trespass to try title ⚶41(1).**

Evidence in trespass to try title *held* to support court's finding of value of lands without improvements placed thereon by defendant claiming adversely.

**7. Improvements ⚶4(2).**

Where purchaser relied on statements of vendor, and did not examine public records or abstract, he was not, as against true owner, as purchaser in good faith, entitled to value of improvements.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Trespass to try title by Maggie L. Peters and husband against J. B. West and others. From a judgment for plaintiffs, defendants appeal, and plaintiffs file cross-assignments of error. Affirmed in part, and in part reversed and rendered.

W. A. Rowe, J. R. Hill, and Pritchett Harvey, all of Houston, for appellants.

Baker, Botts, Parker & Garwood, Rodman S. Cosby, and Jas. A. Baker, all of Houston, for appellees.

LANE, J. This suit was filed in the district court of Harris county on the 18th day of June, 1924, by Maggie L. Peters, joined pro forma by her husband, R. C. Peters, against J. B. West and wife, Ada West, W. A. Rowe, E. C. Rowe, A. C. Bailey, R. H. Elman, Myrtle Pugh and husband, Kyle Pugh, Ora Scarregga and husband, George Scarregga, Charles J. West, and Katie West, to recover title and possession to section 20, Washington County Railway survey, block No. 4, containing 650 acres of land, situated in Harris county. The petition was in the ordinary form of suit of trespass to try title. They also sued for the reasonable rental of said land.

The defendants answered as follows: J. B. West and wife by plea of not guilty, and the ten-year statute of limitation. The Pughs, the Scarreggas, Katie West, and W. A. Rowe each by plea of not guilty; by disclaimer of all the land sued for except the certain 10 acres described in their respective answers; by plea of title under the ten-year statute of limitation, and improvements in good faith. A. C. Bailey and R. H. Elman by plea of not guilty; by disclaimer of all of the land, except 20 acres thereof specially described in their answer, and as to such 20 acres they pleaded title under the ten-year statute of limitation and improvements in good faith. E. C. Rowe by plea of not guilty; by disclaimer of all the land except the 50 acres described in his answer; and as to such 50 acres he pleaded title by the ten-year statute of limitation and improvements in good faith.

The cause was submitted to the jury, who were given instructions defining "adverse possession," "peaceable possession," and "claim of right," respectively, as follows:

" 'Adverse possession,' as the term is used in this charge in its legal signification, is an actual and visible appropriation of the land commenced and continued under a claim of right inconsistent with, and hostile to, the claim of another.

" 'Peaceable possession,' as the term is used in this charge, in its legal signification, is such as is continuous and not interrupted by adverse suit to recover the land.

" 'Claim of right' simply means that the entry of the limitation claimant must be with the intent to claim the land as his own, to hold it for himself, and such must continue to be the nature of his possession."

After giving such instructions, and others not necessary to be here stated, the court submitted the cause upon special issues, in answer to which the jury found: First, that J. B. West and wife were in actual possession of the land held by them under the original inclosure; second, that the houses and outhouses occupied by J. B. West and wife were on the 18th day of June, 1914, west of the lower east line of section 20 of Washington County Railway survey 4, as established in 1909 by the surveyor Packard; third, that J. B. West and wife had peaceable and adverse possession of the land under inclosure, cultivating, using, and enjoying the same for a period of ten years before the filing of this suit on June 18, 1924, and that they began to claim said land and assert title thereto in January, 1910; fourth, that the possession of West and wife was of such nature and character for a full period of ten years before the filing of this suit as to put a reasonably prudent person on notice that they were occupying the land and claiming the same; fifth, that West and wife did believe within a period of less than ten years next before the filing of this suit, that the land of which they were in possession on said section 20 belonged to the state of Texas, and to no one else, and that they claimed said land only as against the state of Texas for a period of ten consecutive years prior to the filing of this suit; sixth, that West and wife had not, for any period of ten consecutive years prior to June 18, 1924, claimed any land in said section 20 which was not within their inclosure; seventh, that A. C. Bailey and R. H. Elman, at the time they placed their

improvements on the land purchased by them from W. A. Rowe, had good grounds to believe that the title under which they claimed and entered was good, and that they made their improvements in the faith of such belief, and that such land has, by reason of the improvements placed thereon by A. C. Bailey, been enhanced in value in the sum of $864, and, by reason of improvements placed thereon by R. H. Elman, in the sum of $693.90; eighth, that the survey of section 20 as made by Packard conflicts with the lines of section 19 to the extent of 158 varas.

Upon the answers of the jury to the issues submitted and the evidence, the court rendered judgment against all defendants in favor of the plaintiffs for all the land sued for, except that part of lot No. 36 "lying east of the upper west line of survey No. 19, Washington County Railway survey, block No. 4, which said upper west line is hereby fixed as being 320 vs. west of an iron pipe the northeast corner of the George Green survey; the part of lot 36 hereby excepted being a parallelogram 158 vrs. east and west and 555 vs. north and south more particularly and specifically described as follows: Beginning at an iron pipe, the northeast corner of the George Green survey; thence west 162 vrs. along the north line of the George Green survey for the beginning point of the tract hereby excepted; thence north from said beginning point 555 vrs. to a point in the south line of the Simon Contreres survey; thence west 158 vrs. along the south line of the Simon Contreres survey; thence south 555 vrs. to the north line of the George Green survey; thence east along the north line of the George Green survey 158 vrs. to the point of beginning, containing 15.534 acres."

The judgment also, decreed the following awards: To the plaintiffs against A. C. Bailey and R. H. Elman the sum of $180, as the rental value of the land claimed by Bailey and Elman; to A. C. Bailey against plaintiffs the sum of $864, as the value of improvements placed by him on said land, together with 6 per cent. interest thereon from date of judgment; to R. H. Elman against plaintiffs the sum of $693, as the value of improvements placed on said land by him, together with 6 per cent. interest thereon from date of judgment.

It further decreed as follows:

"It is further considered by the court, and so ordered, adjudged, and decreed, that until and unless the plaintiffs, R. C. Peters and Maggie Peters, pay to the defendants Bailey and Elmer the amounts adjudged to them in the preceding paragraph, less the amount of the rental of $180 (the rental for the purposes hereof being adjudged one-half against Bailey and one-half against Elmer, or $90 against each of them), no writ of possession shall issue as to the 20 acres of land claimed by said Elmer and Bailey, and hereafter described, for a period of twelve months from the date of this judgment. It is further ordered and decreed that, if the plaintiffs do not, within the period of one year from the date of this judgment, pay to the defendants Bailey and Elmer the amounts hereinabove adjudged to them, with interest thereon, and less the rental as hereinabove referred to, said defendants may at any time within six months after the expiration of a year from the date hereof pay to the clerk of this court for the benefit of the plaintiffs, R. C. Peters and Maggie Peters, the sum of $2,500 which the court hereby and now finds to be the value of the 20 acres of land, without regard to the improvements, and, if said defendants make said payment, subject to the conditions hereinabove set forth, the plaintiff shall be forever barred of their writ of possession against the following described 20 acres of land, to wit: [Here the 20-acre tract claimed by Bailey and Elmer is described by metes and bounds in the decree.]"

It is also decreed that all relief prayed for by any party to the suit that has not in the foregoing paragraphs of the judgment been granted is expressly denied. All costs of suit were adjudged against the defendants pointly and severally. From the judgment so rendered all defendants have appealed.

The land sued for by the plaintiffs, Peters and wife, is described in their petition as being approximately 650 acres in Harris county, Tex., known as section 20, Washington County Railway survey out of block 4.

The defendants J. B. West and wife, under whose possession all other defendants claim title by the statute of limitation of ten years, in asserting title by limitation, made the following averments only:

"The defendants say that they * * * have held peaceable continuous and adverse possession, cultivating and using the same, the land claimed in plaintiff's petition, for more than ten years after plaintiffs' cause of action accrued, and before the commencing of this suit, of this they are ready to verify."

J. B. West and wife, nor any of the other defendants, rely upon title to any part of the land sued for, except such as they may have by virtue of the statute of limitation pleaded by them respectively.

The defendant J. B. West, without whose adverse possession the other defendants would have no semblance of title to any part of the land, testified that he went out there on the 650-acre tract of land in 1910 or 1912; that, when he went out there, he thought the land belonged to the state of Texas; and that he continued to so think until this suit was filed; that he never at any time prior to the filing of this suit thought anybody but the state owned the land or had any claim to it. Testifying further, he said:

"I thought there was a section out there that nobody had settled on but me, and that it was government land. I thought I could get a legal title by staying on the land ten years,

and then getting a patent from the state. It was my idea to get a home by living there for ten years. My 'idea' was to go there and live there and get a deed from the government, because I believed the government owned the land."

This witness, testifying further, said that he never paid any taxes on any of the 640 acres until after the suit was filed, as he thought it belonged to the state; that he had Mr. Cotton to survey and mark on the ground 160 acres of the 640-acre survey; that, when he got Cotton to survey and mark on the ground the 160 acres, it was the first time it had been surveyed; that nobody else ever marked out the 160 acres, but that he took his hay mower one time and marked out his land; that he was sure that this 160 acres was never marked by any lines until Cotton surveyed it, except when he himself marked it; that he could not remember when Cotton was told to survey and mark the land, but that it was more than a year before the time of his testifying, which was in June, 1925. Surveyor Cotton testified that he surveyed the 160 acres for J. B. West in 1923.

As already shown, J. B. West and wife made no allegation that they had at any time claimed 160 specific acres of land, or any other specified acreage short of the whole tract of 640 acres described in the plaintiffs' petition, and there was no evidence showing that they claimed any specific 160 acres prior to the survey made by Cotton, or any other acreage on section 20, adversely to any one, but, to the contrary, it is shown by the undisputed facts that he believed the land was owned by the state, and that he took possession thereof under such belief, and held the same up to the year 1923, not in hostility to any one under any claim of right, but to the contrary; that he was holding the same in subordination to the title of the true owner, who he thought, as already said, was the state of Texas.

[1] We agree with appellees that under the circumstances stated the court should have peremptorily instructed the jury to find for the plaintiffs on the issue or issues of limitation, for certainly under the pleadings of J. B. West and wife they could not recover any specific 160 acres of the land claimed by the plaintiffs under the statute of limitation, and we think it also certain that, since the undisputed testimony of J. B. West shows that he was not holding the land in hostility to any one prior to the time he had it surveyed by Cotton in 1923, he could not recover under his plea of limitation.

[2] This brings us to a consideration of the contention of appellants as presented by their propositions Nos. 1 to 4, inclusive, to the effect that, as the case was submitted on special issues, and as the court had properly defined the meaning of the terms "peaceable and adverse possession" and "claim of right,"

it was prejudicial error, as against them for the court to make further explanation as to what would or would not constitute "peaceable and adverse possession" and "claim of right" under a given state of facts.

We have just said that we were of the opinion that the court erred as against appellees, in submitting in any form the issue of limitation sought to be raised by the defendants. But, if in such opinion we are in error, and the issue of limitation is one which should have been submitted, we are of opinion that the explanations given by the court of which complaint is made were properly given. By article 2189, Revised Civil Statutes of 1925, it is expressly provided:

"In all jury cases the court may submit said cause upon special issues without request of either party, and, upon request of either party, shall submit the cause upon special issues raised by the pleadings and the evidence in the case. Such special issues shall be submitted distinctly and separately. Each issue shall be answered by the jury separately. In submitting special issues the court shall submit such explanation and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues." Norton v. Houston (Tex. Civ. App.) 235 S. W. 963; Hines v. Hodges (Tex. Civ. App.) 238 S. W. 349.

In answer to special issue No. 3, the jury found that J. B. West and wife had peaceable and adverse possession of the land under inclosure and that they were cultivating using, and enjoying the same for ten years before filing of this suit, and in answer to special issue No. 7 they found that J. B. West and wife believed that the land in their possession belonged to the state of Texas, and to no one else, and that they claimed the same only as against the state of Texas for any period of ten consecutive years prior to filing of this suit, and in answer to special issue No, 8 they found that J. B. West and wife had not for any period of ten consecutive years, prior to June 18, 1924, claimed any land in section 20 which was not within their inclosure.

Appellants insist that there is an irreconcilable conflict in these findings of the jury on material issues submitted, and that under such circumstances the verdict will not support a judgment.

We have already held that no issue relating to limitation should have been submitted to the jury, and, if we are correct in such holding, then there was no conflict in the several answers of the jury on any material issue, even though it be conceded that there was conflict in the answers of the jury to special issues Nos. 1, 3, and 7, which concession, however, we are unwilling to make, as we can discover no such conflict.

[3] The answer of the jury to issue No. 1 relates only to the land under J. B. West's original inclosure, which was shown to be

not more than a few acres, perhaps not more than ten. Answer to issue No. 3 relates to the same land, that is, the small acreage under the original inclosure; and by answer to issue No. 8 the jury found that West and wife had not for any period of ten consecutive years prior to June 18, 1924, the date of the filing of this suit, claimed any land in section 20 claimed by the plaintiffs, except the small acreage which was within their inclosure. If it be conceded that there is apparent conflict in the answers of the jury to the several special issues, there is no such conflict as cannot be reasonably harmonized, nor is such conflict relative to any material issue in the cause. In such circumstances the judgment will not, for reason of such apparent conflict in the jury's answers, be reversed. Houston B. & T. Ry. Co. v. Ashe (Tex. Civ. App.) 158 S. W. at page 208; I. & G. N. Ry. Co. v. Berthea (Tex. Civ. App.) 179 S. W. at page 1090, where it is held that a finding upon a special issue becomes immaterial when other facts have the legal effect to eliminate the issue embodied in such finding.

[4, 5] Appellants' fifth proposition is as follows:

"In submitting cases on special issues, the statute requires that all issues raised by the pleadings be submitted; and, where the defendants plead improvements in good faith, and there is evidence in the record to support such plea, the defendants are entitled to have that issue submitted, and it is reversible error for the court to refuse a requested charge on that issue."

This proposition does not cite any assignment to which it is germane, as required by the rules for briefing, and for that reason should not be considered. Afflerbach v. School District (Tex. Civ. App.) 285 S. W. 333, not yet [officially] published; Equipment Co. v. Luse (Tex. Civ. App.) 250 S. W. 1104; Terry v. Williamson (Tex. Civ. App.) 251 S. W. 813. However, we have looked to the assignments in the back of appellant's brief, and there we find appellants' second assignment, which is as follows:

"The court erred in refusing to give to the jury special charge requested by the defendants, submitting to the jury the question and issue of improvements in good faith, by the defendants, Charley J. West, Katie West, Myrtle Pugh and husband, and Ora Scarregga and husband, as shown by the defendants' bill of exception No. 13."

We have searched the record in vain for the special charge referred to in the assignment, and also for bill of exception No. 13 mentioned therein. There is no such charge or bill of exception in the record.

By article 1985, Vernon's Sayles' Civil Statutes 1914, it is provided:

"The special verdict must find the facts established by the evidence, and not the evidence by which they are established; and it shall be the duty of the court, when it submits a case to the jury upon special issues, to submit all the issues made by the pleading.

"But the failure to submit any issue shall not be deemed a ground for reversal of the judgment, upon appeal or writ of error, unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal or writ of error, an issue not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment; provided, there be evidence to sustain such a finding."

Since appellants did not request the submission of an issue on the question of improvements in good faith and the enhanced value of the property, which they claim by reason of such improvements, it should, in view of the facts shown, the provisions of the statute quoted, and the judgment rendered, be presumed that the court found against appellants on said issue.

We have, however, examined the pleadings of the parties and the evidence, and have reached the conclusion that there is neither pleading nor evidence to support a recovery for improvements placed on the property by any of the defendants; the Pughs, the Scarreggas, C. J. West, Katie West, or W. A. Rowe.

[6] By appellants' tenth and eleventh propositions it is insisted that the court erred in finding that the 20 acres of land claimed by Bailey and Elman, without the improvements placed thereon by Bailey and Elman, was of the value of $2,500, in that there was no evidence to support such finding. Such contention cannot be sustained. Bailey testified that the 20 acres of land was worth $250 per acre as it stood, and the evidence showed that the improvements thereon were of less value than $2,000.

We now come to a consideration of the cross-assignments of appellees.

The substance of the contentions made by cross-assignments Nos. 1 to 4, inclusive, is that upon the closing of the evidence the court should have peremptorily instructed the jury to find for the plaintiffs against all of the defendants.

It is manifest from what we have said that we are of opinion that the court should have instructed the jury to find for the plaintiffs against all the defendants on the issue of limitation, and that the only question left for our determination is, Were the defendants Bailey and Elman entitled to the recovery for valuable improvements placed on the 20 acres of land claimed by them awarded by the judgment?

[7] Cross-assignment No. 5 attacks the judgment making such award as error, insisting:

"(a) That there was a total absence of any evidence to show that either Bailey or Elman purchased in legal good faith; but, on the contrary, the evidence showed they purchased without any examination of the public records,

without procuring or having examined an abstract of title, and purchased on the unsupported assurance of their vendor, W. A. Rowe, that they were getting a good title; and (b) there was an utter absence of any evidence to show the value of the 20 acres before the improvements were made and the value after the improvements were made so as to show the extent to which the land had been enhanced in value by reason of the improvements."

We think the assignment making such attack should be sustained. The answer of Bailey and Elman simply alleged that they purchased in 1922 the 20 acres of land from W. A. Rowe, who was claiming the same under the ten-year statute of limitation, and that they paid Rowe a valuable consideration therefor, believing that they were acquiring a good and valid title thereto. There is no evidence tending to show that Rowe was ever in possession of the land, or any part thereof. Bailey testified that he asked Rowe, his vendor, if he could get a clear title to the land, and that Rowe told him that he could get such title; that in making the purchase he relied on what Rowe told him about the title, and that he made no further investigation as to the title to the land; that Rowe did not tell him that he had examined the record with reference to such title, but "he just said he had the land, and I wanted a home, and I asked him one question: Can I get a clear title? and he said 'Yes.' He told me the title was clear, and took my money. * * * I relied on Mr. Rowe, and, on the strength of his telling me that the title was clear, I paid him the money." He testified that he had been living on the land about three years; that he and his stepson, R. H. Elman, had reduced the land from raw prairie to scientifically cultivated land, and that he had placed thereon a three-room dwelling house, a barn, and other improvements, at a cost to him of $972. He gave no testimony as to the value of the land before and after the improvements were made, nor did he or any one else testify as to what extent the land was enhanced in value by reason of the improvements placed thereon by him.

R. H. Elman testified that Bailey was his stepfather; that he and Bailey were joint purchasers of the land from W. A. Rowe; that Rowe told them he could convey good title to the land, and that when they got their deed from Rowe they believed they were getting a good title; that they never had an abstract of title to the land; that they made no examination of records to ascertain whether or not Rowe had title to the land; that they relied absolutely and alone upon what Rowe told them. He testified that he had placed valuable improvements on the land, but, if he stated the cost of or value of such improvements, we have not been able to find such statement in the statement of facts. He did not testify as to the value of the land without and with the improvements nor as to what extent the land was enhanced in value by reason of his improvements.

W. A. Rowe, the vendor of Bailey and Elman, testified that at the time he sold to Bailey and Elman he thought he had good title to the land under the ten-year statute of limitation; that he took the word of J. B. West, from whom he bought, and a man named Kimball, that West had been living on the land since 1912, and on the strength of their statement he told Bailey and Elman that he thought the title was good and perfect.

Testifying further, he said that he got his deed from West before this suit was filed, but he knew a suit would be filed, because he figured that, to make the title a record title, either West or some one else would have to bring suit and set up "our claim" on the doctrine of limitation, but that he waited for Peters to sue.

Appellees' further contention is: (1) That so much of the judgment as awarded to Bailey and Elman a recovery for improvements should be reversed and held for naught, in that the improvements for which the recovery was awarded were not shown to have been made in good faith, as that term is understood in law, and in support of such contention they cite: Dorn v. Dunham, 24 Tex. 366; French v. Grenet, 57 Tex. 273; House v. Stone, 64 Tex. 678; Brown v. Bedinger, 72 Tex. 247, 10 S. W. 90; Miller v. Brownson, 50 Tex. 597; and Hatchett v. Conner, 30 Tex. 113. (2) That before any such recovery can be had it must be shown what the value of the land was without the improvements, and to what extent the land has been enhanced by reason of the improvements, and that, since there was no such showing, the award made to Bailey and Elman, respectively, for improvements should be set aside. In support of this second contention they cite Sheffield v. Meyer (Tex. Civ. App.) 229 S. W. 614; North Texas Lumber Co. v. Bank (Tex. Civ. App.) 186 S. W. 259; Crump v. Sanders (Tex. Civ. App.) 173 S. W. 559; and Herndon v. Reed, 82 Tex. 647, 18 S. W. 665.

We agree with appellees that the facts shown are insufficient to support a judgment for improvements made in good faith, and we think the authorities cited are applicable to the facts of the present case and support the contentions of appellee.

In Dorn v. Dunham it is held that one claiming improvements in good faith must not only believe that he is the true owner and has reasonable ground for that belief, but he must be ignorant that his title is contested by any person claiming a better right.

Miller v. Brownson:

"If a purchaser will not look to the character of title by virtue of which he enters and improves land, but will close his eyes and recklessly act on the presumption that any one who will sign a deed has a valid title, he has no one to blame but himself."

Hatchett v. Conner:

"It is difficult to perceive how a party can honestly believe that his title is good, or how his possession can be in good faith, when he is unable to trace his title back to the government, the only source of title to land."

For the reasons above expressed, so much of the judgment as awards to A. C. Bailey and R. H. Elman a recovery for the value of the improvements placed by them on the land claimed by them is reversed, and judgment is here rendered that they take nothing on their claim for improvements.

The remainder of the judgment in favor of the plaintiffs is affirmed.

Reversed and rendered in part.

Affirmed in part.