MARVIN CLIFT ET AL. v. LEONORA CLIFT ET AL.

No. 2581.

1. **Tenant for Life.**—A tenant for life of an undivided interest in common with other tenants who are entitled to the remainder has no higher right in this respect than if he were such tenant of the entire estate, and his legal representatives can not recover from the remainder man compensation for improvements which he has put upon the property. The right of the remainder man to the enjoyment of the estate free from incumbrances placed on the property by the tenant for life attaches immediately on the death of the life tenant.   This doctrine applies to a case in which the father was tenant for life and made improvements on a lot to which his children were entitled in remainder.

2. **Case Followed.**—Corbett v. Laurens, 5 Rich. Eq., 301, followed.

3. **Equity.**—In the adjustment of equities growing out of conflicting claims which arise under our statute laws establishing community rights, the courts will not be restricted by the rigid rules which ordinarily apply between tenants in common.

4. **Community Property in two Marriages of Husband.**—A surviving husband after he had married a second wife continued to occupy a lot as a tenant in common with his first wife's children, holding an undivided interest therein by fee simple title, the property having been acquired as community property during his first marriage.   During such occupancy by the husband, and after his second marriage, he erected permanent improvements on the lot, paying therefor partly with community property of the first marriage and partly in money and community property of the second marriage.   In a suit for partition brought by the second wife and her children against the children of the first marriage—*Held,* Since the lot and improvements thereon could not have been partitioned except by a sale, the surviving wife was entitled to have set aside to her such an amount as the value of the land was enhanced through improvements paid for by her interest in the fund used in building.

5. **Fact Case.**—See opinion for facts under which an equitable partition was directed by a sale of real property between the surviving widow whose community interest was used in making improvements and the surviving children of the deceased husband by a former marriage.

APPEAL from Ellis.   Tried below before Hon. Anson Rainey.

This was a proceeding to settle and determine the respective interests of the widow and children—children of two marriages—of S. A. Clift, in the real estate in Waxahachie, Texas, which was declared, in Clift v. Kaufman & Runge, 60 Texas, 64, to be exempt property, and was afterwards set apart to the widow and children as such.   The property had ceased to be used for homestead purposes, and this was a suit by the widow and her children against the children of the first marriage of S. A. Clift for partition of the property and for an adjustment of equities by reason of improvements.

The main contention in the case arises from the fact that the brick store house on lot 4, block 9, which is 13 feet on land that was separate property of the first Mrs. Clift and 10 feet on land that was community property of S. A. Clift and his first wife, was placed on the land during the second marriage of S. A. Clift, and with funds, in part, of the second community.

The other property in dispute—lot 7, on which with lot 6 the residence

was situated—was virtually decreed to the parties in accordance with their rights as shown by the legal title to the property. Lot 6 was separate property of the first Mrs. Clift, and lot 7 was community of S. A. Clift and his first wife. The two lots are in one enclosure, the improvements being mostly on lot 7 but partly on 6.

The case being tried below without a jury, the court found in effect that the improvements on lot 4 amounted to $3000, and were made by S. A. Clift in good faith with $600 of community funds of himself and first wife and $2400 of community funds of himself and second wife, and the rights of the parties in respect to such improvements were determined separately from the land itself, the second community being in effect reimbursed its funds used in such improvements.

Appellants here, defendants below, sought to set off appellees' claims by counter claims that the second was indebted to the first community for funds received, and also that S. A. Clift had used and received rents from property of his first wife exceeding the amount of funds of the second community used in improving lot 4.

There was practically no controversy about the main facts of the case.

*A. A. Kemble & Son*, for appellants.

*Groce & Templeton*, for appellees.—When a father with funds of himself and a second wife improves property in which he is interested as a tenant in common with his minor children by a former wife, and such improvements are made in good faith upon property which without them would be practically valueless, and no detriment to such minors from such improvements are shown, then upon final partition of such property between such minors and others interested therein as widow and heirs of such father compensation should be made to the representative of the second community for its funds used in such improvements, and the remaining value of such improvements should be awarded to the parties according to their rights by inheritance from the father who made them. Furrh v. Winston, 66 Texas, 521; Rice v. Rice, 21 Texas, 66; Hall v. Piddock, 21 N. J. Eq., 314; Freem. Coten. and Part., secs. 138, 510.

GAINES, ASSOCIATE JUSTICE. —Stephen A. Clift married in the year 1859. In February, 1871, the wife of that marriage died, leaving three children, who are the appellants in this court. In the latter part of the year 1871 he married a second wife, the appellee Leonora Clift, and died in 1882, leaving four children of the second marriage. At the time of the death of the first wife there were certain lots in the then town of Waxahachie upon which he resided with his family and did business as a merchant. He continued in the occupation and use of these lots until his death. Some of the lots were of the separate property of the first

wife and others were of the community estate of himself and his second wife.

This suit was brought by the second wife and her children against the children of the first marriage, for the purpose of having a partition of the community lots, and for the adjustment of certain equities claimed to have grown out of improvements placed upon the property with the community funds and estate of the second marriage.

The main contention of appellants is that the court erred in its decree in reference to a certain lot 4, upon which Clift erected a brick store house after his second marriage. The lot and store house front on a square looking west. The lot is forty feet wide, and the south half, it is conceded, was the separate estate of the first wife. The north half was sold by Clift and the first wife during their marriage, and a strip thereof ten feet wide adjoining the south half and extending its entire length was bought back during her lifetime. It is also conceded that this strip was community property of the first marriage. The brick store house is twenty-three feet wide, and is situated upon the strip of ten feet and extends over thirteen feet upon the south half. The court below found that the house was paid for by a lot of the value of $600, which was community property of the first marriage, and by goods and money which belonged in common to Clift and his second wife, and that the house was worth $3000.

The ground upon which the house stood on the south half of lot 4 was adjuged to be the property of appellants, and that on the north was decreed to belong one undivided half to appellants and the other undivided half to all the parties, as follows: a third interest for life to appellee Lenora Clift and subject to this life estate; that half to belong to all the children of S. A. Clift, each holding an equal interest. In other words the court in effect adjudged that as between the parties to this suit one undivided half of the strip of land 10 feet wide on the north half of lot 4 was to be treated as the separate property of the first Mrs. Clift at the time of her death and the other half as the separate property of her husband at the time of his death. So far the conclusions were correct. But it also adjudged that appellee Lenora Clift had an interest of $1200 in the store house; that her children had an interest of $857.15 and appellants an interest of $942.85 in the same. This result was reached by allowing Mrs. Clift one-half the value of the community assets of herself and her deceased husband, which went into the building; by awarding to appellants the value of one-half of the assets of the community estate of their father and mother, which was also used in its construction; and allowing all the children of both marriages the value of the other half of all such of the assets—that is to say, the value of one-half of all the property and money used in erecting the house. The decree appointed commissioners

to divide the property in accordance with the respective interests of the parties as settled by the court, and directed them to report at next term.

We think there was error in the decree of the court. The court properly adjudged that the south half of lot 4 was the property of appellants. There is no controversy about this. It was their mother's separate property, and upon the termination of their father's life estate in an undivided third they became the absolute owners.

It is too plain for argument that a tenant for life of an undivided interest in common with other tenants who are entitled to the remainder can have no higher right in this respect than if he was such tenant of the entire estate; and it must be held both upon principle and authority that his legal representatives can not demand of the remainder man compensation for improvements which he has put upon the estate. During life he is entitled to the use and enjoyment of the property; but upon his death the remainder man's right to its enjoyment free from any encumbrances immediately attaches. This right the latter would not have if the tenant for life were permitted to place improvements upon the property at will for which he could be required to pay upon entering into the estate. It is then his privilege to appropriate the property to such uses as his business, convenience, or pleasure may dictate. The estate in remainder would be seriously impaired if the tenant for life were permitted to improve in his way and for his own purposes and to make such improvements a charge upon the property. That this can not be done is laid down by an eminent text writer (1 Washburn Real Prop., 110), and is maintained in an able and elaborate opinion by the Supreme Court of South Carolina in the case of Corbett v. Laurens, 5 Rich. (Eq.), 301. That case, like this, was one in which the father, a tenant for life, made improvements upon a lot to which his children were entitled in remainder. Knowing that after his death the estate is to become the absolute property of those for whom it is his duty to provide, the presumption is strong that the father in such a case intends the improvement as a gratuity to his children.

In proceeding to the consideration of the improvements upon that portion of the lot lying north of the dividing line we note that appellants contend that the evidence did not warrant the finding of the court that the building was paid for in part with the community property and funds of the second marital union. But we think this claim is not based upon sufficient grounds. The facts are meager. But it was shown that when Stephen A. Clift was first married in 1859 he was doing business as a merchant, having a stock of goods valued by the witness at from $4000 to $6000. When his first wife died in 1871 it seems that he had on hand in goods and money about $4000. There is no proof that at that time he owed any debts, and it must be presumed that he owed none. He continued business until a short time before his death in 1882, when he be-

came insolvent from losses on cotton. From 1874 to 1876 the business was done in the name of Clift & Fraley, from which it would appear that he then had a partner, though the testimony does not make this clear.

The house was built in 1879. The contractor testified that he was paid in a half a lot valued at $600, which is conceded to have been community of the first marriage, and in goods from the store and in money. The amount of goods and money was $2400, but how much of each was not shown. If it had been shown that the identical goods Clift had on hand at the time of his first wife's death went to pay for the construction, a trust in the property to amount of the value of her community interest therein would have been shown. But it is unreasonable to suppose that this was a fact. After the lapse of eight years from the death of the first wife we think the presumption must be indulged in the absence of some other evidence that the goods were acquired during the second marriage and were community property of Clift and the second wife. This would be the case as to the money which was paid to the contractor, even if had been shown, as appellants claim, that the money came from the store. But we do not so construe the testimony. We do not understand the contractor as saying that the money came from the business of the store. His language as shown by the statement of facts is: "The remainder, $2400, was paid partly in money and partly in goods from Clift's store." Where the money came from there is nothing to show, and hence the presumption is that it was community estate of the then existing marital union. We conclude that the finding of the court was correct upon this matter.

But is the second community estate entitled upon partition to be reimbursed for the money so invested? As to the strip of land now under consideration, Stephen A. Clift, father of appellant, occupies a different position from that held by him as to remainder of the land upon which the building stands. He was a tenant in common with his wife's children of this strip, holding an undivided half interest by fee simple title. This property belonged in common to himself and his first wife, and he was the surviving husband.

It may be conceded that as a mere tenant in common he could claim nothing for his improvement unless it could be set apart to him by leaving one-half in the value of the land unimproved to his first wife's children; but we may say as to this small piece of ground that it did not admit of any partition. The parties, even in the lifetime of the father, could only have secured their interest by a sale. A sale therefore being necessary to a severance of their interests no reason is seen why the parties who would have been entitled to the property and funds which paid for the house should not have set apart to them from the proceeds of the sale the amount by which the value of the land has been enhanced by such improvement. Since the equities of the appellees may be secured

without depriving appellants of any right which they would have had if the improvement had not been made, we see no reason why it should not be done. Besides we are of opinion that in the adjustment of equities growing out of the conflicting claims which arise under our community laws we should not be restricted by the rigid rules which apply ordinarily between tenants in common. See Rice v. Rice, 21 Texas, 66; Furrh v. Winston, 66 Texas, 521.

We consider it unnecessary to discuss the question of rents of the old frame store house on lot five or the insurance money collected by the father of appellants when that house was burnt. Nor need we consider the question of improvement and rents upon the farm in the country, the property of the first Mrs. Clift. It is not shown that any money from any of these sources went into the improvement on lot four, which is the subject of contention here. If Clift received money from these sources which justly belonged to appellants and for which he did not account, that would make him their debtor to the amount so received but would not make him a trustee for their benefit of property acquired by him into which this money is not clearly traced.

Following the statutory rule, we think only so much should be allowed for the improvements as the value of the property has been increased thereby.

We are of opinion that the court below should have awarded the appellants the recovery of the south half of block four free of all claims and incumbrances; that it should have assessed the value of the ground on the north half of that lot and ordered the same, together with so much of the building as stands thereon, to be sold; that from the proceeds of the sale the value of the ground so assessed should be first taken and divided as follows: First, there should be paid to Mrs. Clift a sum equal to one-sixth interest for life in the proceeds of the land proper, the remainder of one-half such proceeds, after deducting Mrs. Clift's interest, to be divided equally among the other parties and the other half to go to appellants. What remains of the proceeds of the sale, after deducting the value of the land, should be divided as follows: Twelve-thirtieths to Mrs. Clift, one-half to all the other parties, to be equally divided between them, and the remaining one-tenth to appellants, to be equally divided among them.

The judgment will be reformed in accordance with the views expressed in this opinion and affirmed. But the cause will be remanded to the lower court with instructions to assess the value of the land on the north half of lot four without regard to the improvements, and to determine what proportion the value of a life estate in Mrs. Clift bears to the value of the absolute title, and to decree a sale of said strip and the improvements thereon and a distribution of the proceeds in accordance with this judgment.

*Reformed and affirmed.*

Opinion November 27, 1888.