BENJAMIN F. SARGEANT ET AL. V. MARY LOUISE SARGEANT.

No. 5083. Decided April 3, 1929.
(15 S. W., 2d Series, 589.)

*Joseph F. Greathouse,* for appellants.

The survivor in community cannot be compelled by the heirs to discharge the community debts out of his separate estate, so as to leave to them the community intact. Mattingly v. Kelly, 124 S. W., 483; Leatherwood v. Arnold, 66 Texas, 414; Davis v. Harmon, 29 S. W., 492; Martin v. McAllister, 94 Texas, 567; Gilroy v. Richards, 63 S. W., 664; Sims v. Hixon, 65 S. W., 36; Jennings v. Barton, 98 S. W., 445; Suggs v. Singley, 167 S. W., 241.

Upon the death of husband or wife, leaving community property which is encumbered with a mortgage, which is paid off by the survivor in community, the shares of the heirs should be charged with one-half ($\frac{1}{2}$) the amount so paid and one-half ($\frac{1}{2}$) of the balance left unpaid. Same authorities.

A surviving husband is entitled to the use and occupancy of the homestead, and, so long as it remains his homestead and contributes to his support, he is entitled to the rents thereof as his separate property; and where he uses the rents in paying a community debt constituting a lien on the homestead, and taxes thereon, he is not entitled to reimbursement therefor out of the community estate. Same authorities.

Said property partitioned herein sold for the sum of Forty-Five Thousand ($45,000) dollars and it was error for the court to hold and decree that the same sold for $45,106.97, and allow the defendant one-eighth (⅛) part of said $106.97.

The court erred in finding and decreeing that, "during the year 1926, the rents and revenues derived from said property collected and appropriated to his own use and benefit by the said B. F. Sargeant, exceed the combined amount of the taxes, city, county and state, for that year, and therefore the amount of said taxes for the year 1926 would be a charge against the interest of said B. F. Sargeant, and would not be a charge against the interest of the other heirs." Same authorities.

*R. C. Fuller* and *W. M. Short,* for appellee.

There being no dependent members of the family remaining with the appellant, Benjamin F. Sargeant, and therefore the rents not being used nor necessary for the support of the family, such rents did not constitute separate property of the appellant. Woods v. Alvarado State Bank, 275 S. W., 187; Cameron v. Morris, 83 Texas, 14; Sykes v. Speer, 112 S. W., 422; Mattingly v. Kelly, 124 S. W., 483; Sims v. Hixon, 65 S. W., 36.

Appellant's right in the homestead after death of his wife was that of occupancy and the interests of the other heirs in the homestead were not affected by such occupancy. Zwernermann v. Von Rosenburg, 76 Texas, 522, 13 S. W., 485.

A homestead under the constitution and statutes is constituted for the head of a family, as defined by law, and where no such family exists, upon the death of the wife, the right of the husband in the homestead is that of occupancy and the interests of the other heirs in the property is not affected by the same. Woods v. Alvarado State Bank, 275 S. W., 187; Sykes v. Speer, 112 S. W., 422; Cameron v. Morris, 83 Texas, 14; Pryor v. Stone, 19 Texas, 371, 70 Am. Dec., 341.

As to the rents and revenues of the property and especially as to the excess in value of the property over the homestead exemption, appellant and appellee were co-tenants and appellee had the right to demand her share of rents at any time, and being a minor and appellant having converted all of the same to his own use and the income from the property having exceeded all expenditures, appellant had neither the legal nor the equitable right of recovery from appellee. Whiteman v. Burkey, 282 S. W., 788; Clement v. First

Nat. Bank, 282 S. W., 558; Sims v. Hixon, 65 S. W., 35; Higgins v. Higgins, 129 S. W., 162; Spencer v. Pettitt, 268 S. W., 779; McCaskey v. Morris, 89 S. W., 1085; 29 C. J., 1009, Sec. 498; 29 C. J., 1010, Note 38, citing Mattingly v. Kelly, 124 S. W., 483.

Appellant by his use of the premises increased the expense of the operation of the same in insurance, upkeep, improvements made necessary in the comfort of his roomers, and the judgment of the court was correct in enforcing payment for same out of the rents.

As a matter of equitable adjustment of the rights and interests between appellant and appellee, the court did not err in refusing recovery to appellant. Martin v. McAllister, 94 Texas, 567; Miller v. Odom, 152 S. W., 1185; Burns v. Nichols, 207 S. W., 158; Revised Statutes, Art. 6086; Mattingly v. Kelly, 124 S. W., 483; Revised Statutes 1925, Art. 3955–3956.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

### STATEMENT OF THE CASE.

The Court of Civil Appeals for the Second Supreme Judicial District has certified the following statement and questions:

"This cause is based on a partition suit filed by Benjamin F. Sargeant, his daughters, Mrs. Weatherford and Mrs. Brown, joined by their husbands, and a son, H. H. Sargeant, against Mary Louise Sargeant, a minor granddaughter. The property involved is a rooming house of 40 rooms built during the marital life of B. F. Sargeant and his now deceased wife, Mrs. Mary Jane Sargeant, who died July 9, 1919. The defendant is a daughter of a deceased son, who died in 1918.

"The trial court found that the property in question was the actual and the business homestead of B. F. Sargeant and his wife during her lifetime and had been used as such since her death. Plaintiffs sought a judgment of partition and also a judgment against the minor defendant for her *pro rata* part of certain itemized expenses alleged to have been incurred in the upkeep of the property, such as taxes, city, county and state, alleged to have been paid since the death of Mrs. Sargeant; a note for $3264.32, alleged to have been executed prior to the wife's death and since paid by B. F. Sargeant, the proceeds from said note alleged to have been used for the payment of taxes due on the property. In addition to taxes, plaintiff sought to recover from defendant a $480 item for the installation

of an automatic heater, $400, for the installation of a 'permanent fire escape' for said building, and certain items of fire insurance, etc. Plaintiff alleged that these items of expense aggregated $8733.03. The property was sold pending the suit for $45,000, plaintiffs receiving another piece of property in trade, valued at $20,000. The trial court found that the rentals from the property during the time subsequent to the death of Mary Jane Sargeant exceeded the expenditures for all purposes, and for which the right of contribution was sought against the defendant, by more than $2000. The trial court granted the partition, but failed to grant plaintiffs the right of contribution as against defendant for the expenses alleged and established by the evidence. From this judgment plaintiffs have appealed.

"On original hearing, we affirmed the judgment below, but on motion for rehearing, we are not entirely agreed as to what judgment should be entered, and consider it advisable to submit to Your Honors the questions hereinafter set out. Appellee pleaded below the two-year statute of limitation. We are of the opinion that such plea should be sustained as to all items of expense incurred and paid more than two years prior to the filing of the suit, on to-wit, February 24, 1927. Hanrick v. Gurley, 93 Tex., 458, 54 S. W., 347. This leaves three items of taxes aggregating $887.35, and the taxes due and unpaid for subsequent years and up to the time of the trade, aggregating $1709.61, the total of which, in our opinion, is not barred by limitation, and at least two of us are of the opinion that as to these items the appellee should have been required to make contribution.

"One item of $106.97 was paid to the receiver by the purchaser as accrued taxes up to the date of the trade on the property given in part exchange for the property in controversy. The appellants took this property. The trial court added this item to the price for which the property was sold, and awarded appellee a one-eighth interest in the total, less some items of cost. Some of us believe that this item should not have been added to the price for which the property was sold, but was in fact due the appellants. That such item of taxes was not part of the price for which the property was sold.

"Question 1. Is the two-year statute of limitation a bar, in this case, to all items of expense, accruing and paid for prior to two years before the filing of the suit?

"Question 2. Should the item of $106.97 be added to the price for which the property was sold, and appellee awarded one-eighth of the total?

"Question 3. Where the facts showed that, during some eight years subsequent to the death of Mrs. Sargeant, the income from the property exceeded the expenses thereon by more than $2000, and the property was shown to be a business homestead, and in the absence of any specific language in the Constitution or in any statute making such income the separate property of the plaintiff, and in view of the fact that there was no proof in the record that such excess was absolutely necessary to the support of the survivor, (a) was such income the separate property of B. F. Sargeant; (b) was such excess the separate property of B. F. Sargeant?

"Question 4. Are the principles of equity to be applied in deciding this case, or are merely questions of law involved?

"For the authorities touching the third question, we have examined Hinzie v. Moody, 13 Texas Civ. App., 193, 35 S. W., 832, writ of error denied; 13 R. C. L., p. 595, sec. 59; Pryor v. Stone, 19 Texas, 371; Ackley v. Chamberlain, 16 Cal., 181; Garrett v. Jones, 95 Ala., 96; Goldman v. Clark, 1 Nev., 607; Bailey v. Bauknight, 25 S. W., 56; Turner v. Turner, 107 Ala., 465; Laughlin v. Wright, 63 Cal., 113; McDowell v. His Creditors, 103 Cal., 264, and other cases cited in 41 L. R. A. (N. S.), page 304.

"Appellee calls our attention to the fact that plaintiff did not specifically seek to recover for the state and county taxes for the year 1924, paid January 26, 1925, until he filed his first amended petition, on April 6, 1927, and that therefore if limitation applies at all, it applies to this item. But if Your Honors decide that limitation does apply, we can, in our judgment, determine its application to this and other items."

OPINION.

As will later appear by this opinion we do not find it necessary to discuss question No. 1, except insofar as it may apply to the note for $3264.32, later discussed.

As to question No. 2, it seems to be agreed that the receiver received from the purchaser the sum of $45,000 for the property in question in this suit, included in which was certain other property to be taken by the plaintiffs herein, all being adults, in lieu of money, at the price of $20,000, upon which last named property there had accrued, at the time of the sale, taxes, which the purchaser of the property involved in this suit paid to the receiver, the sum of

$106.97. From the above we conclude that the appellants took the property which was exchanged in part payment for the property in question in this suit at the value of $20,000, and that taxes had accrued against the property being taken by appellants to the amount of $106.97, at the time of the sale. The purchaser of the property in question herein was therefore compelled to pay said $106.97 to make his property of the value of the $20,000 for which appellants were receiving same. Under this state of facts appellants would be entitled to all of the $106.97, and appellee would not be entitled to any portion thereof as appellants are fully charged with this amount when they are charged with the $20,000.

As to question No. 3, we are of the opinion that under the various provisions of our Constitution and the statutes of this state which will be later quoted in this opinion, that all revenues, rents, and income derived from the homestead, as such, are the separate and individual property of the survivor and that without any reference whatever to whether the same is rented out either in whole or in part by the survivor, or used by him in a business of his own. Under Sec. 52 of Art. XVI of our Constitution it is provided expressly that "it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead." Under Art. 3501, R. C. S. 1925, this provision of the statute is also contained in statutory form, and it is there provided that the homestead shall not be partitioned among the heirs of the deceased wife during the lifetime of such surviving husband, or so long as he may elect to use or occupy the same as a homestead. Mattingly v. Kelly, 124 S. W., 483; (Civ. App.) Roberts v. Roberts, 278 S. W., 937; Salmons v. Thomas, 62 S. W., 102; Ruble v. Ruble, 264 S. W., 1018. The very plain provisions of the Constitution and statutes of this state can have no other meaning than to vest the survivor with all income of every character derived from the homestead so long as the homestead rights shall exist, as his separate and individual property. In holding that the rents and revenues derived from the homestead are the separate and individual property of the survivor, we are not considering a case where minor children and unmarried daughters are permitted under the statute, by proper proceedings, to occupy the homestead. No such case is before us.

As to the item of $3264.32, being the note paid by appellant, we are of the opinion that it is a proper charge against the community estate, and the survivor having paid all of same out of his separate funds, should be reimbursed by the heirs of the wife for one-half

thereof. The indebtedness was a valid lien against the property at the time of the death of the wife and was a community debt. The survivor was also personally liable for the payment of same. Leatherwood v. Arnold, 66 Texas, 414; Martin v. McAllister, 94 Texas, 567, 56 L. R. A., 578. No statute of limitation barred this item. Hanrick v. Gurley, 93 Texas, 458, 54 S. W., 347.

We are further of the opinion that the survivor holding the homestead as such after the death of the other spouse is not entitled to reimbursement for expenditures on account of permanent improvements made on the property during the time he retains possession of the property as a homestead, where such improvements are voluntarily made. Elam & Stewart v. Parkhill, 60 Texas, 581; Clift v. Clift, 72 Texas, 144.

This brings us to a consideration of the question as to whether the appellant, as the surviving husband, is entitled to reimbursement for expenses incurred for ordinary repairs and current taxes paid by him while using and occupying the premises as a homestead after the death of his wife; and in order to properly decide this matter it is necessary to ascertain whether the homestead rights of the surviving husband constitute an estate in land, and if so, the kind and character of the estate. In order to do this we must properly interpret and construe the following constitutional and statutory provisions of this state:

Constitutional provisions:

Section 51, Art. XVI, reads as follows:

"The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

Section 52, Art. XVI, reads as follows:

"On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the de-

ceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same."

Art. 3501, R. C. S., 1925, reads as follows:

"On the death of the wife, leaving a husband surviving, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of such surviving husband, or so long as he may elect to use or occupy the same as a homestead."

Since the property in question was community property of appellant and his deceased wife, and was also the community homestead, it belonged one-half to appellant, and one-half to the wife during her lifetime, and, under the above constitutional and statutory provisions, after the death of the wife, the surviving husband still owned the fee simple title to the one-half community interest he owned during the lifetime of the wife, and the other half descended and vested in her legal heirs at law, subject to, and burdened with, the right of the husband to use and occupy said premises during his natural life. That is to say the surviving husband has the right to exclusively possess, use, and occupy the premises as a homestead, so long as he lives, and such right carries with it the right to live on said premises, to exclusively possess and control same, and to collect and appropriate to his own use all rents and revenues derived therefrom, during all the time in which he so holds the property as a homestead. Further, as above stated, this right exists until the death of the said surviving husband.

It is plainly evident that the above rights guaranteed to the surviving husband under the Constitution and laws of this state constitute the homestead rights of the husband in the one-half interest of the land belonging to the deceased wife's heirs, an estate in land. Hargadine v. Whitfield, 71 Texas, 482, 9 S. W., 475; Gonzales v. Gonzales, 115 Texas, 16, 273 S. W., 798 (Sup. Ct.).

Since it is clear that the homestead right is an estate in land, it then becomes important to determine the kind or character of the estate. Corpus Juris, Vol. 21, p. 938, defines a life estate as follows:

"A life estate is a freehold interest in lands, the duration of which is confined to the life or lives of some particular person or

persons or to the happening or not happening of some uncertain event. A life estate is not an estate of inheritance but is a freehold, whether for the tenant's own life or for that of another person. Such an estate may be made to depend upon a contingency, upon the happening of which the estate may be entirely defeated before the death of the grantee; for example, if an estate is given to a woman while she remains unmarried, or during widowhood, or to a person so long as he shall dwell in a particular place or shall use the granted premises for a specified purpose, in which last case it has been held that the grant must be to a natural person and not to a corporation. The indefinite duration of the estate and the fact that it may continue for life places it within the category of estates for life; it matters not how contingent or uncertain the duration of the estate may be, or how probable is its termination in a limited number of years, if it is capable of enduring for the term of a life. Life estates were, at common law, given or conferred by the same feudal rights and solemnities, the same investiture or livery of seizin, as fees themselves. A tenancy which operates as an estate for life, being a freehold, can only be passed by deed, that is in writing under seal."

When the homestead right is measured by the above definition, it is clear to us that the homestead right in land contains every element of a life estate, and is therefore, at least in the nature of a legal life estate, or, in other words, a life estate created by operation of law. 21 C. J., p. 938, paragraphs 60 and 61; 29 C. J., p. 784, paragraphs 5 and 6; Wapples on Homestead Exemptions, p. 274; Cherokee Const. Co. v. Harris, 92 Ark., 260, 122 S. W., 485, 135 Am. St. Rep. 177. An examination of the authorities discloses that the courts of last resort in many of the states have held the homestead right to be a life estate in land. In Cliff v. Cliff, 72 Texas, 144 (see page 147), our Supreme Court, in speaking of the right to reimbursement, expressly calls the surviving husband a *tenant for life* in the homestead.

It follows from what we have said that, if the rules of the common law can be looked to in construing and interpreting our constitutional and statutory laws relating to homestead rights, then the duties and liabilities of appellant with reference to ordinary repairs and current taxes on the part of the homestead held by him belonging to the heirs of the deceased wife, should be ruled by the common law, where not in conflict with the letter or spirit of our Constitution and laws. In this connection we will say that it has been settled by the Supreme Court of this state that our Constitution

"was framed with reference to the common law, and in judging what the Constitution means, we should keep in mind that it is not the beginning of the law of the state, but it assumes the existence of a well understood system, which was still to remain in force and be demonstrated, and that the constitutional definitions are in general drawn from the common law." Great Southern Life Ins. Co. v. City of Austin, 112 Texas, 1. In the last cited case our Supreme Court, speaking through Chief Justice Cureton, goes into an exhaustive discussion of constitutional interpretation and construction, and holds that "The Constitution is not to be given a technical construction, but must be construed in an equitable manner, so as to carry out the great principles of the government," and further, "State constitutions are construed in the light of the common law, since the common law is generally in force in the United States." We therefore conclude that the homestead rights guaranteed and conferred by the Constitution and laws of this state should be interpreted and construed in the light of the common law, and that the rules of the common law with reference to the duties and liabilities of the holders of life estates, should be applied in the case at bar.

We are further of the opinion that under the common law the owner of the life estate is liable for current taxes. Richardson v. McCloskey, 276 S. W., 681 (Tex. Comm. App.); 37 Cyc., p. 790 (c); Washburn on Real Property, Vol. 1, p. 30; 13 R. C. L., p. 669, Sec. 125; Thompson on Real Property, Section 739. We might cite numerous other authorities to the same effect as the above holding.

We think the rule is equally well settled that the owner of the life estate in possession and enjoying the fruits, rents and revenues thereof cannot charge the reversioner with the cost of repairs. Richardson v. McCloskey, 276 S. W., 681 (Tex. Comm. App.); Thompson on Real Property, Sec. 738.

We therefore conclude that the appellant has no right to charge the heirs of the deceased wife with expenses incurred by him in making ordinary repairs and paying current taxes on the one-half interest in the property heired by them from their deceased mother, and held by appellant as a homestead.

There is another reason why, in our opinion, the survivor should not be reimbursed for such taxes and expenses for upkeep. As stated by Judge Cureton in Great Southern Life Ins. Co. v. City of Austin, supra, "The Constitution is not to be given a technical

construction, but must be construed in an equitable manner so as to carry out the great principles of government." It is certainly according to equity and good conscience to require the survivor to pay current taxes, and deny the right to reimbursement for expenses of upkeep, when under the Constitution and laws of this state he is given the exclusive possession of the premises for life, or as long as he elects to use or occupy the same as a homestead, and this right carries with it all the fruits, rents and revenues derived therefrom. To hold that the heir who cannot touch the property, or derive any character of benefit therefrom until the death of the survivor, which may not occur for many years, and in many instances until the cost of upkeep and taxation has eaten up a large part of the value, and sometimes more than the value of his interest in the property, must pay such cost of upkeep, and taxes while the survivor retains the property, would, to our minds, be placing a construction on the Constitution and laws of this state highly technical, unjust, and inequitable. Certainly no court should hold that the framers of the Constitution intended to grant the homestead to the survivor burdened with such unjust liabilities to the heirs, unless such a construction was plainly evident in the Constitution itself.

We therefore recommend that, as applied to the right of reimbursement for payment of the note for $3264.32, Question No. 1 be answered "No"; that Question No. 2 be answered "No"; that Question No. 3 as to both (a) and (b) be answered "Yes." It is not necessary to answer Question No. 1, with reference to any other items than the note above mentioned, under the views here expressed, and therefore it is unanswered except as to such item.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

*C. M. Cureton,* Chief Justice.