**WILLIAMS et al. v. DAVIS et al.**
No. 13962.

Court of Civil Appeals of Texas.
Fort Worth.
Oct. 13, 1939.

Rehearing Denied Nov. 24, 1939.

Bonner, King, Dawson & Jones, of Wichita Falls, for appellants.

Otis E. Nelson and James E. Prothro, both of Wichita Falls, for appellees.

SPEER, Justice.

By an original petition filed March 3, 1938, and amended July 26, 1938, Joe S. Davis, Dora Pirtle and husband, Grady Pirtle, Alice Bledsoe and husband, William Bledsoe, John S. Davis, Alton K. Davis, Minnie Dill and husband, R. L. Dill, William Davis, Nettie Carter and husband, H. N. Carter, Ed Davis, Joe Davis, How-

ard Davis, a minor, by next friend, Joe Davis, Mamie Muirhead and husband, Buddie Muirhead, as plaintiffs, sued James M. Williams, Oral Jones and C. P. Engelking, as trustees of the Real Estate Trust, a Common Law Trust (shown by the record to be successor to North Texas Building & Loan Association, in liquidation), in statutory form of trespass to try title for an undivided one-half interest in lot 8 in Block 109, Floral Heights Addition to the City of Wichita Falls, Wichita County, Texas.

By plaintiffs' pleadings, it is disclosed that they are the only children and descendants of a deceased child of the deceased wife of W. L. Davis, to whom the property was deeded during the lifetime of his wife. In addition to the usual and customary trespass to try title petition, plaintiffs plead their title as one inherited by them from their mother when she died, in November, 1918; that the father, in 1926, gave a deed of trust on the whole of the lot to the North Texas Building & Loan Association, and thereby cast a cloud on plaintiffs' title to the interest inherited by them from their mother. They prayed for a recovery of one-half interest in the lot, for joint possession and that the cloud from their title be removed.

Insofar as is necessary to state here, defendants plead the general issue of not guilty, and (a) their own title by virtue of ownership by W. L. Davis when, in May, 1926, he executed a deed of trust on said property, representing himself to be the sole owner, to secure an indebtedness of $2,350 to North Texas Building & Loan Association, for moneys advanced with which to construct a new building on said premises, in addition to those already thereon, and (b) that on April 29, 1929, the said W. L. Davis, representing himself to be the sole owner of the property, executed a second and renewal deed of trust against the property, securing said Association in the payment of $2,500, which included a balance unpaid on the original obligation of $2,027, and additional amounts theretofore advanced by the Association in upkeep, taxes and repairs on the improvements situated on the lot. That all said improvements were placed on the premises by W. L. Davis, in good faith, under the belief that said property belonged to him and that at his special instance and request the Association had, in good faith, furnished said funds for those purposes; that said improvements enhanced the value of said

property to the extent of $2,500; that default was made in payment of the indebtedness to the Association, and in August of 1932 the property was sold out by the trustee and the Association became the purchaser at the sale; that defendants hold under a deed of conveyance from said Association. Prayer was that plaintiffs take nothing but that if they are permitted to recover anything that defendants recover the value of the improvements so made by their grantor, the Association.

The case was tried to a jury on special issues. The verdict of the jury on the issues submitted found (1) that the value of the property in November, 1918, when Mrs. Davis died, was $1,000; (2) the reasonable rental value of the property since March 3, 1936, was $833; (3) the defendants necessarily expended, since March 3, 1936, in the upkeep of the property, $275, and (4) the reasonable cash value of the use and occupation of the premises from July 5, 1932, to date of trial, in the condition it was in before the Association furnished any money for its improvement, was $396. On this verdict, the court entered judgment for plaintiffs for an undivided one-half interest in the lot in controversy and for $169.34, being the balance of one-half its reasonable rental value, less one-half of the sum paid by defendants for taxes and upkeep.

Defendants moved for new trial, which motion was overruled, and they have perfected this appeal. For convenience we shall continue to give the parties the same designation as that carried by them in the trial court.

Floral Heights Realty Company is the common source of title. That company conveyed the lot in controversy to W. L. Davis, by deed dated January 18, 1915. At the time of the above conveyance, W. L. Davis was married to N. V. Davis. Immediately after the purchase, W. L. Davis and wife erected a small house on the lot, at an expense of about $100, and moved into it with their family. It was thereafter at all times used as the homestead of the family until the wife died in November, 1918. In May, 1916, Davis and wife created a materialman's lien on the lot to secure payment of $384, used in connection with tearing down the smaller house and constructing a larger and better one. This lien was released in June, 1918, before the death of the wife.

When the wife died, on about November 11, 1918, she left surviving her husband,

W. L. Davis, and ten children. One of them died after the death of the mother and left certain children. The surviving children of Mrs. Davis and those of the deceased son are the plaintiffs here. No administration was had on the estate of Mrs. Davis; her husband, W. L. Davis, did not qualify as community administrator. The community estate owed $700 when Mrs. Davis died. There were no community assets in the surviving husband's possession, except the house and lot in controversy. At the time of the wife's death, the house and lot were worth $1,000, and the jury so found. Shortly after his wife's death, W. L. Davis collected $999 on an insurance policy in his favor on the life of his wife, and paid the $700 of community debts out of those funds which belonged to him. W. L. Davis continued to use and occupy the premises as a homestead, until he was dispossessed by a foreclosure proceeding in 1932.

May 1, 1926, W. L. Davis executed a deed of trust on the lot to secure North Texas Building & Loan Association in the payment of $2,350. The fund so secured was used by Davis to erect another house or set of improvements upon the same lot and to make some minor repairs on the house previously built. In the deed of trust mentioned, grantor was recited to be a widower and the instrument contained this provision: "For the purpose of obtaining the line of credit represented by the within described note and this deed, I represent that I am a widower and that the above described property has been purchased since the date of the death of my last wife, and that said above described property is my separate property and estate, paid for out of my earnings, which were earned by me subsequent to the death of my said last wife, and that I have no minor children and there is no impediment for my mortgage of the same."

On April 29, 1929, W. L. Davis, recited to be a single man, executed another deed of trust to secure North Texas Building & Loan Association in the sum of $2,500, evidenced by a new note of that date, shown to be a renewal and extension of $2,027.85 of the unpaid balance of the first mentioned note and deed of trust lien; $85.53 in payment of accrued taxes; $237.36 balance due and unpaid on a paving lien against the property, and $149.26 in cash to Davis; the instrument subrogates to all the previous liens mentioned in the first deed of trust, the tax and paving liens.

Default was made in payment of the last mentioned note and on July 5, 1932, the trustee sold the property under terms of the deed of trust and North Texas Building & Loan Association became the purchaser. W. L. Davis moved off the premises, the Association went into possession and thereafter retained possession until it conveyed the lot to the Real Estate Trust, some time in 1935, for the purpose of liquidating the Association.

It will be observed that W. L. Davis was the record owner of the property and such interest as plaintiffs had was an equitable one created by statute. They plead their title as being one inherited from their mother in the lot, it being community property between W. L. Davis and his wife. This would be an equitable title. Having so pleaded, they could not recover under their general allegations of trespass to try title. 41 Tex.Jur., sect. 79, p. 559, and sect. 83, p. 562. They could only recover such title as they proved. The undisputed testimony shows that the lot in controversy was community and was the homestead at the time the wife died. The uncontroverted evidence also shows that there were $700 in community debts owing, and no community funds with which to pay them, and that the father, W. L. Davis, paid these debts out of his separate property.

Under Vernon's Ann.St. Constitution Art. 16, sect. 52, and Art. 3501, R.C.S. it is provided that upon the death of the husband or wife, or both, the homestead shall descend and vest in the same manner as other real property of the deceased. These articles contain other provisions relating to partition, but this is not a partition suit, and with this we are not here concerned.

When Mrs. Davis, mother of plaintiffs, died, they inherited her community interest in the lot in controversy, subject to one-half of the community debts, and W. L. Davis, the father, retained his one-half interest, together with the right of use and occupancy of the property for homestead purposes. The father had the right to either sell the community property and pay the community debts, in which event the interest in the property inherited by plaintiffs would have been wiped out, or to pay those debts out of his separate funds and appropriate the property, or so much of it as was necessary for that purpose, to reimburse himself for the advancement made. He could not under either op-

tion act in such a way as would be a fraud upon the heirs of his deceased wife. Stone v. Jackson, 109 Tex. 385, 210 S.W. 953; Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L.R.A. 585; Jones' Adm'r v. Jones, 15 Tex. 143. Case of Martin v. McAllister, supra, involved a suit by a surviving father against the children of his deceased wife, to remove cloud from title to the former homestead by reason of claims by the children through their mother. The father had, subsequent to the death of his wife, paid community debts out of his separate funds, in excess of the value of the property, and it was held that the title should be quieted in the father.

In the case at bar, if there had been no community debts, the plaintiffs inherited from their mother an equal interest in the property with their father (not to consider the father's homestead right). But upon payment by the father of the community debts, one-half, or $350, of which were owing by the estate of the mother, the father became possessed of and entitled to an interest (to that extent) greater than his original one-half, and it follows that the plaintiffs' inherited interest would be reduced to that extent. Thus it will be seen that after the community debts were paid, the property shown to be worth $1,000 contained only a net equity of $300, one-half of which was inherited by plaintiffs. The equitable interest of plaintiffs in the property, after the community debts were paid, was $150. This amount is 15% of the total established value.

In this case, the defendants stand in the shoes of W. L. Davis, the father of plaintiffs, they having acquired all the interest in the property owned by Davis. Certainly plaintiffs should not recover a greater equity in the property from defendants than they could have recovered from their father. Yet, in this case they were awarded an undivided one-half of the property as it now stands (present value not shown), after another separate and independent set of improvements had been placed upon it at the expense of the father and his grantees. These new improvements cost from $2,000 to $2,350; the exact amount is not made plain by the testimony. Plaintiffs have been out nothing save the use of the $150 equity they inherited from their mother, and this use was given by law to the father so long as he lived or elected to use it as a homestead. Defendants acquired all of the rights and interest in the property that the father could sell and dispose of. It would appear from these indisputable facts that the recovery was a most inequitable one.

This brings us to a consideration of the point whether or not plaintiffs could recover an interest in the permanent improvements placed on the lot by the father with funds procured from North Texas Building & Loan Association, for which the lien was given to secure. After the death of the wife, W. L. Davis, the father, was entitled in his separate right to the use of the property, and if he chose to rent it out and use the rentals in lieu of using it for living purposes, the rentals would belong to him; he was obligated to pay taxes and maintain the improvements at his own expense, and neither he nor his grantees would be entitled to reimbursement by plaintiffs in proportion to their equity therein for such items. Sargeant v. Sargeant, 118 Tex. 343, 15 S.W. 2d 589 (adopted by Supreme Court). In the case cited it is also held that the father (and this would apply to his grantees in this case) was not entitled to reimbursement for permanent improvements voluntarily placed by him on the premises during the time he held and used it, citing as authority for the statement, Elam & Stewart v. Parkhill, 60 Tex. 581; Clift v. Clift, 72 Tex. 144, 10 S.W. 338. A reading of the authorities pointed out leads us to conclude that by the expression "voluntarily made" by the survivor, as used by the court, is meant that the permanent improvements were made without reasonable grounds to believe that he was possessed of full title. The Sargeant v. Sargeant case, supra, does not attempt to announce a different rule to that so well established in this State, which entitles litigants to recover for improvements made in good faith under the belief that they own title. In the Elam & Stewart v. Parkhill case, above cited, decided in 1884, the rule for recovery of improvements made in good faith was announced in this language: "To entitle a party to a recovery for the value of improvements it is essential that he be a possessor in good faith. That is, he must believe that he is the true owner of the land, and be ignorant of the fact that his right is contested by some person claiming a superior title; and notwithstanding he may have notice of an adverse claim, yet if he has reasonable and strong ground for believing such claim to be destitute of any just or legal

foundation, other requisites concurring, he may be a possessor in good faith." See also 23 Tex.Jur., sect. 14, p. 388, and the many authorities there cited.

The last set of improvements were placed on the lot by W. L. Davis about eight years after the death of his wife and at a time when he was continuing to use and occupy the premises, either by virtue of the statutory provisions or under a claim of ownership because he had paid the community debts, which with his right of occupancy were of greater value than the community estate.

If W. L. Davis placed the permanent improvements upon the lot in 1926, under the bona fide belief that he was owner of the fee title, he (and his grantees without notice to the contrary) would be entitled to be reimbursed for their value before the equitable interest of plaintiffs could be determined. The bona fide belief of Davis, under all the facts and circumstances, were questions of fact to be determined by the jury. We find some evidence of probative force in the record, which is susceptible to a construction of supporting either theory, and we express no opinion upon its force and effect.

If upon another trial it should be found that W. L. Davis placed the second set of permanent improvements on the lot in good faith, with reasonable grounds of belief that he was the fee owner of the land at that time, defendants, having acquired the rights of W. L. Davis, would be entitled to reimbursement for their value before the interests of plaintiffs would be obtainable in the residue. Upon the other hand, if it be found that said improvements were not placed there under conditions entitling W. L. Davis to reimbursement then, in our judgment, plaintiffs would be entitled to share in them upon the theory that their father voluntarily placed them there, as held in the case of Sargeant v. Sargeant, supra.

We further hold that the interests of plaintiffs to be established in the property as it now stands, giving effect to what we have said about the second set of improvements placed there by the father, will be 15% thereof, that being the equitable interest acquired by them in the property by inheritance from their mother, after payment by the father of community debts In addition to this, the equities which grow out of rental values and necessary expenses incurred during the time defend-ants have had exclusive control should be adjusted by the court, as the facts may be found to justify.

We have not discussed defendants' assignments of error seriatim for the reason that by the nineteen assignments they present in different forms four points, they being, (1) the court erred in overruling their general demurrer; (2) the court should have given defendants' requested peremptory instruction; (3) the recovery was for a greater interest than plaintiffs were entitled to, and similar to No. 3, (4) plaintiffs were not entitled to recover an interest in the permanent improvements placed on the property under and by virtue of the loan procured from North Texas Building & Loan Association. Based upon the conclusions herein expressed, we overrule assignments grouped in (1) and (2) above, and sustain those included in group (3), and hold that the question raised in group (4) was not fully developed, and that upon another trial that issue should be decided as hereinabove pointed out.

The conclusions reached by us require a reversal of the judgment of the trial court, and it is accordingly so ordered.