Seena **MILLER**, Appellant,

v.

Oma Dee Miller **GASAWAY** et al.,
Appellees.

No. 8221.

Court of Civil Appeals of Texas,
Texarkana.

Jan. 4, 1974.

Pat Beadle, Clarksville, for appellant.

Gooding & Gooding, Clarksville, for appellees.

CORNELIUS, Justice.

Appellees brought suit against appellant for partition of certain land. The trial court rendered judgment non obstante veredicto in favor of appellees and the appellant has perfected this appeal.

The suit involved 50.46 acres of land in Red River County which was formerly the community property of Ross E. Miller and his first wife, Josephine McGill Miller. Mrs. Josephine McGill Miller died intestate on January 13, 1948, and her undivided one-half interest in the 50.46 acre tract vested in the children of her marriage to Ross E. Miller, who were the appellees Oma Dee Gasaway and Mary Celene Speegle. After the death of Josephine McGill Miller, Ross E. Miller married Seena Miller. Thereafter they resided on the 50.46 acre tract for some twenty years, and with their community funds they erected improvements thereon consisting of a house and other buildings of a value of $7,850.-00. Ross E. Miller died in 1968. He left a written will which was duly admitted to probate and which devised all of his interest in the 50.46 acre tract to appellant Seena Miller. On the trial of the suit the jury found that the land was capable of division in kind, either taking or not taking into consideration the value of the improvements, and that Ross and Seena Miller made the improvements on the land in ". . . the good faith belief that they owned the *full title* to the land."

The trial court granted appellees' motion for judgment non obstante veredicto and ordered that the land be divided into two equal moieties, taking into consideration the value of the land together with the improvements, and that the portion containing the improvements be set aside to Seena Miller. The effect of the judgment will be to divide the land in such a manner that the appellees will receive a portion of the unimproved land equal in value to one-half of the total value of the land and the improvements and Seena Miller will receive the improvements but less than one-half of the land, thus making the two shares equal *in value*. Seena Miller was also awarded judgment against appellees for reimbursement for $862.50, representing one-half of certain lien payments made by her and Ross E. Miller, together with interest thereon.

Appellant contends that the land itself should be divided equally between her and appellees without regard to the value of the improvements, and that she should receive that one-half of the land on which the improvements are situated. The appellees contend that the trial court's action was correct because they are entitled to one-half of the total value of the land, including the improvements. They assert that to deny them their share of the total value would, in effect, charge them with one-half of the cost of the improvements, and that since Ross E. Miller after the death of his first wife was possessed of a homestead right in the land in addition to his undivided one-half interest in the fee title, his possession was the same as that of a life tenant, and he therefore improved the property at his peril and is not entitled to reimbursement for the improvements, regardless of whether or not he acted in the good faith belief that he owned the full title to the land. In the alternative, appellees contend that the evidence is legally insufficient to support the jury's finding that Ross and Seena Miller were good faith improvers.

It is the settled rule in Texas that a party who owns an undivided interest in the fee and who also owns a homestead right or a life estate in the property cannot charge the remaindermen with the value of permanent improvements made during the time the property was occupied under the homestead right or life estate. In other words, in partition the remaindermen are entitled to share in the value of the improvements in the same proportions that they own the fee. Sargeant v. Sargeant, 118 Tex. 343, 15 S.W.2d 589 (Tex. Comm.App.1929); Sparks v. Robertson,

203 S.W.2d 622 (Tex.Civ.App. Austin 1947, err. ref'd); Richmond v. Sims, 144 S.W. 1142 (Tex.Civ.App. Texarkana, 1912, err. dism'd). See also Clift v. Clift, 72 Tex. 144, 10 S.W. 338 (1888) and Elam & Stewart v. Parkhill, 60 Tex. 581; Annotation, 98 ALR p. 860; 26 Texas Law Review 538, and Collett v. Collett, 217 S.W.2d 60 (Tex.Civ.App. Amarillo 1948, ref'd, n. r. e.) As stated by the Commission of Appeals in Sargeant v. Sargeant, supra

". . . The survivor, holding the homestead as such after the death of the other spouse, is not entitled to reimbursement for expenditures on account of permanent improvements made on the property during the time he retains possession of the property as a homestead, where such improvements are voluntarily made."

Nevertheless, an exception to the above stated rule prevails when the life tenant and part fee owner makes such improvements in the good faith belief that he owns the *full title* to the land. In such a case he is entitled to recover the improvements, or the amount they have enhanced the value of the land, in addition to his portion of the fee under the general equitable rule regarding improvements made in good faith on the land of another, which is sometimes called the rule of "betterments". Williams v. Davis, 133 S.W.2d 275 (Tex.Civ.App. Fort Worth 1939, no writ); Lawrence v. Lawrence, 231 Ark. 324, 329 S.W.2d 416 (1959); Annotation, 89 ALR 635; Killmer v. Wuchner, 79 Iowa 722, 45 N.W. 299 (1890); Staples v. Pearson, 230 Ala. 62, 159 So. 488 (1935); 98 ALR 852, Annotation. See also Dorn v. Dunham, 24 Tex. 366 and Bond v. Hill, 37 Tex. 626. This exception is consistent with the reasons which support the Texas general rule. The words "voluntarily made", as used in the statement of the Texas rule in the *Sargeant* case and others, refer to the improver's awareness that he holds possession under a life estate and that the fee title, in part at least, is owned by others. That is,

knowing the "character of his tenure", his improvements presumably were placed on the land largely for his own benefit during the life estate with the knowledge that they will, to some extent at least, vest in the remaindermen on termination of the life estate. Sparks v. Robertson, supra; Richmond v. Sims, supra. However, if he does not know the "character of his tenure", but in good faith believes that he is the owner of the *entire fee title*, he is entitled to his improvements thus made, the same as any other possessor in good faith.

While the Texas rule of good faith improvements is expressed in our trespass to try title statutes, (Art. 7393, Vernon's Ann. Tex.Civ.St.) it rests on equitable grounds and exists independently of those statutes. Wood v. Cahill, 21 Tex.Civ.App. 38, 50 S. W. 1071 (1889, dism'd), and cases there cited.

We thus conclude that even though Ross E. Miller was a homestead tenant when the improvements were made, the appellant was entitled to recover them if there is legally sufficient evidence to support the jury's finding that they were made by Ross E. Miller and appellant in the good faith belief that they then owned the full title to the land.

To sustain the claim of good faith in the making of the improvements, the appellant testified that the lien payments on the land fell in arrears and that she and her husband received a letter from the Southwestern Life Insurance Company, the lien holder, threatening foreclosure. She testified that Ross E. Miller sought the help of Mr. Anderson in connection with the lien, and that Mr. Anderson later brought them a legal paper to sign, and that when she and her husband signed the paper they thought that the insurance company had foreclosed on the land and that Mr. Anderson had bought it in and was reselling it to them on credit. In actuality, as appellant concedes she later discovered, Anderson had simply refinanced the land, paying the in-

surance company lien and taking a new deed of trust from Mr. and Mrs. Miller. There was no evidence that anyone actually represented to Mr. and Mrs. Miller that they were receiving any title from Mr. Anderson. Neither is there any testimony that anyone represented, or that Mr. and Mrs. Miller even believed, that the deed of trust they signed was a deed. Mrs. Miller only testified that Mr. Miller told her, " . . . it's mine and yours now . . . " and that both he and she "understood" the transaction as being a foreclosure and a sale to them. There was no evidence that any investigation of the title or the deed records was made or that any additional circumstance existed which would give reasonable grounds for Mr. and Mrs. Miller to believe that they owned the full title to the land. It is undisputed that prior to the signing of the deed of trust to Mr. Anderson, Mr. and Mrs. Miller knew the daughters of the first marriage owned an undivided one-half interest in the land. In January of 1949, Mr. and Mrs. Miller were joined by the daughters in signing an oil and gas lease covering the land, and in 1959 Mr. Miller wrote to one of the daughters requesting that she give him her power of attorney so that he could execute an oil and gas lease covering her interest in the land. The transaction with Mr. Anderson occurred in 1951. Some of the improvements in issue were erected between 1951 and 1959, but some of them were erected after the power of attorney was requested in 1959.

For one to qualify as a good faith improver under the equitable rule of "betterments" he must show not only that he believed that he was the true owner of the land but also that he had reasonable grounds for that belief, and that he was ignorant that his title was contested by any person having a better right. Parrish v. Jackson, 69 Tex. 614C, 7 S.W. 486 (1888). It is generally held that one has the duty to investigate the records prior to erecting improvements, and that if an examination of such records would readily reveal the true status of his claim, he cannot qualify as a good faith improver. Parrish v. Jackson, supra; West v. Peters, 287 S.W. 81 (Tex.Civ.App. Galveston 1926, no writ); Donaldson v. Rall, 14 Tex.Civ.App. 336, 37 S.W. 16 (Tex.Civ.App.1896, writ dism'd); Hall v. Wilson, 215 S.W.2d 204 (Tex.Civ.App. Texarkana 1948, writ ref'd, n. r. e.). The deed of trust Mr. and Mrs. Miller signed in the transaction with Mr. Anderson showed on its face that it was not a deed. Even if they thought that they were receiving a deed from Mr. Anderson, or indeed if the instrument had actually been a deed, a simple check of the abstract or deed records prior to erecting the improvements would have revealed that Anderson himself never had any semblance of title. Thus, Mr. and Mrs. Miller's claim falls within the prohibition applied in Parrish v. Jackson and under the circumstances they were not entitled to be classed as possessors in the good faith belief that they owned the full title to the land. Parrish v. Jackson, supra; West v. Peters, supra; Hall v. Wilson, supra; Donaldson v. Rall, supra. Therefore the evidence was legally insufficient to support the jury's finding of good faith and the trial court properly disregarded it. Appellant had the burden to bring herself within the exception pertaining to good faith improvers. See 30 T.J.2d p. 334, and cases there cited. As she failed to do so, the improvements belong to the land, and the trial court properly divided the land and the improvements equally according to total value, with appellant's share having the improvements physically located thereon.

The judgment of the trial court is affirmed.