## FIRST NAT. BANK OF BOWIE v. PHILLIPS et al.

### No. 13387.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 4, 1936.

Rehearing Denied Jan. 15, 1937.

T. B. Coffield, of Bowie, for plaintiff in error.

Donald, Kearby & Donald, of Bowie, for defendants in error.

BROWN, Justice.

J. C. McNatt and his wife, Mary C. Mc-Natt, lived in Montague county for many years and reared five children, four daughters and one son, and on May 5, 1923, Mary C. McNatt died, leaving surviving her husband, J. C. McNatt, the son, C. C. McNatt, and the four daughters, Mrs. Elsie Phillips, Mrs. Lillian Campbell, Mrs. Mabel Campbell, and Mrs. Golda McDaniel.

Certain real estate was acquired by J. C. McNatt and wife during her lifetime, and this lawsuit arises over a controversy concerning the interest the four above-named daughters inherited from their deceased mother.

Before Mrs. Mary C. McNatt died, J. C. McNatt and his son, C. C. McNatt, were operating as farmers and stock raisers, in a relationship which they both admit was a partnership. After Mrs. Mary C. McNatt died, her surviving husband, J. C. McNatt, made no effort to qualify as community survivor, and no administration of any kind, character, or description was had on the estate of Mary C. McNatt, deceased.

It appears that on February 11, 1928, the four surviving daughters, joined by their respective husbands, and the surviving son, C. C. McNatt, executed and delivered to their father, J. C. McNatt, a deed conveying a tract of about 309 acres of land in Montague county; the deed reciting that the grantors conveyed all their undivided interest in and to said land. The consideration recited was $500 cash in hand paid and the execution of a vendor's lien note of even date with the deed in the sum of $6,000, payable to the grantors on or before February 11, 1929.

Shortly after the execution of this deed and the above-mentioned vendor's lien note, J. C. McNatt executed and delivered to a named trustee his deed of trust, conveying the said 309-acre tract to such trustee for the use and benefit of the Federal Land Bank at Houston, Tex., to secure the sum of $4,800. This instrument is dated March 9, 1928. We find indorsed on the above-mentioned $6,000 vendor's lien note a credit as of March 17, 1928, in the sum of $4,560.

On February 10, 1933, the four named daughters, joined by their husbands, brought suit against J. C. McNatt, C. C. McNatt, and the First National Bank of Bowie, Tex., to recover the sum of $1,440, principal, same being the balance unpaid on the above-mentioned $6,000 vendor's lien note, and the petition alleged that C. C. McNatt was not entitled to participate in the sum of money sued for because he had already received a sum of money far in excess of his undivided one-fifth interest in the original note. The petition further alleged that the defendant the First National Bank of Bowie was claiming some interest in the property in question because of a deed of trust which had been executed and delivered to it, but that the lien created thereby is inferior to the plaintiffs' asserted lien. They sued for debt, interest, attorneys' fees, and a foreclosure of their vendor's lien.

The above-named bank being the only party to the suit that appealed from the judgment of the trial court, we will not attempt to detail the allegations in the pleadings filed by J. C. McNatt and C. C. McNatt, but will merely refer to them as occasion demands.

The above-named bank filed an answer and a cross-action. The substance of the cross-action is that J. C. McNatt and C. C. McNatt were doing business as a partnership under the firm name of J. C. McNatt & Son between the years 1907 and 1923, and that on or about June 20, 1931, in extension and renewal of their indebtedness incurred prior to May 5, 1923, for money advanced to them by the City National Bank of Bowie, Tex., which indebtedness for a valuable consideration and by instrument in writing was assigned to said First National Bank, the said J. C. McNatt and C. C. McNatt, for a valuable consideration, executed and delivered to said First National Bank their promissory note in writing for the principal sum of $7,500, due and payable to the order of the said bank, on July 1, 1932; that no part of said principal sum has been paid, but that the interest thereon has been paid up to August 20, 1932, by the execution of two notes, one for the sum of $200, dated July 28, 1932, and one for the sum of $500, dated July 27, 1932, also payable on demand, and that concurrently with the execution of the $7,500 note J. C. McNatt and C. C. McNatt executed and delivered to said First National Bank, for the purpose of securing the aforementioned indebtedness, their said deed of trust, by the terms of which they conveyed three tracts of land situated in Montague county, Tex., the first being a 160-acre tract, the second being the 309-acre tract referred to above, and the third being a 365-acre tract.

The pleading alleges that the obligation sued upon was created and incurred during the lifetime of Mrs. Mary C. McNatt, and while she and J. C. McNatt were husband and wife, and said bank prays for judgment against J. C. McNatt and C. C. McNatt on the three notes and for foreclosure of its deed of trust lien, upon all the interest of J. C. McNatt and C. C. McNatt in

and to the three tracts of land theretofore described, and further prays that in the event the proceeds derived from the foreclosure sale of the property covered by the deed of trust be insufficient to pay off the bank's indebtedness in full, that the bank be decreed to have a statutory lien upon the undivided interest and estate of Mary C. McNatt, deceased, same being the portions of said three tracts of land claimed by the plaintiffs in this suit, and they pray, for the payment of any such balance due on the bank's judgment, that the trial court decree that the entire three tracts of land be made subject to execution. The pleading further prays that in event plaintiffs be held to be entitled to a foreclosure of their vendor's lien upon the 309-acre tract, said bank be decreed to have a superior lien thereto for the purpose of securing the payment of said balance.

To the bank's cross-action, the said four daughters and their husbands pleaded the statutes of limitation against the bank's right to subject the lands in question, inherited by them from their deceased mother, to the payment of its alleged debt. These parties specially pleaded that Mrs. Mary C. McNatt died without having made any will, and that no administration of any kind was ever had on her estate, and alleged that some five years after their mother's death one Hutchison, acting as agent and president of the said City National Bank, advised the plaintiffs that there was a balance due of approximately $4,000 to said bank, which was chargeable against the estate of J. C. and Mary C. McNatt, and requested the plaintiffs to execute a deed covering their interest in the 309-acre tract to J. C. McNatt for a consideration of $6,000, and that this would enable J. C. McNatt to obtain a loan, and that if plaintiffs would do this and assist J. C. McNatt in obtaining such loan, the said bank would take the money so obtained and pay off and discharge the indebtedness owing to it by said community estate.

Plaintiffs alleged that all these things were done in consideration of such promise; that the deed was made, the loan was secured, and the said City National Bank received the sum of $4,560, which was taken in full satisfaction of the asserted community indebtedness.

The plaintiffs further alleged that the 160-acre tract was partially paid for out of the separate funds and estate belonging to their deceased mother.

The plaintiffs further denied that any part of the indebtedness sued upon by the said bank was a community debt, which was owing prior to and at the time of the death of their said mother.

J. C. McNatt and C. C. McNatt allege by their pleadings that the note sued upon by the bank is in fact a community debt, which has been renewed and extended from time to time, and they deny all of the material allegations in the plaintiffs' pleadings.

The case was tried to a jury and eleven issues submitted, the substance of the same and the answers thereto being as follows: (1) Are the notes sued upon by the bank given in renewal of an indebtedness owing by J. C. McNatt, or the partnership firm of J. C. McNatt & Son at the time of the death of Mrs. Mary C. McNatt? Answer: No. (2) Is any part of the note sued on by the bank given in renewal of an indebtedness owing by J. C. McNatt or the partnership firm of J. C. McNatt & Son at the time of the death of Mrs. Mary C. McNatt? Answer: No. Under the instruction of the court it was not necessary to answer issue No. 3. Issue No. 4 inquires whether or not C. C. Hutchison, acting for said City National Bank, and the plaintiffs agreed that if they would execute the deed to their interest in the 309-acre tract to their father, J. C. McNatt, and if said J. C. McNatt would procure a loan upon the land for approximately $4,000, and such loan be turned over to the said City National Bank, such bank would accept the same in full settlement of the indebtedness owing by the estate of Mary C. McNatt to said bank? Answer: Yes. By issue No. 5 the jury found that the sum of approximately $4,000 was paid to the City National Bank. We need not notice issues No. 6 or No. 7, as they have no bearing on the issues presented on the appeal. By issue No. 8 the jury found that the 160-acre tract was not wholly paid for with funds owned by Mrs. Mary C. McNatt as her separate estate; and by issue No. 9 the jury found that such tract of land was partly paid for with such funds. By issue No. 10 the jury found that the amount of purchase money which came from such separate funds was $675. We will not notice issue No. 11 as it does not affect any issue before us.

The said bank requested a peremptory instruction before the court charged the jury and this was refused.

The verdict having been received, the trial court rendered judgment for the said plaintiffs for the balance sued for on said $6,000 note, with interest and attorneys' fees and foreclosing the plaintiffs' vendor's lien on an undivided four-tenths interest on the said 309-acre tract. The court rendered judgment for the said bank against J. C. McNatt and C. C. McNatt on the three notes executed by them and sued upon by the said bank, and foreclosed the bank's deed of trust lien on an undivided three-tenths interest in and to the 160-acre tract, and an undivided six-tenths interest in and to the 320-acre tract, and the 365-acre tract. The court found in the judgment that the 309-acre tract and the 365-acre tract were the community property of J. C. McNatt and Mary C. McNatt, deceased, and that the plaintiffs were entitled to an undivided seven-tenths interest in and to the 160-acre tract, subject to a life estate of a one-third interest therein in J. C. McNatt, their father; and that J. C. McNatt owns an undivided one-eighth interest and C. C. McNatt owns an undivided seven-fortieth interest in and to said 160-acre tract.

From this judgment the bank alone has appealed, and we are therefore not concerned with the controversies between the daughters and their father, J. C. McNatt, and their brother, C. C. McNatt.

 The theory on which the plaintiff in error brings this suit for insufficient relief is predicated on the idea that the testimony shows that its indebtedness is a community debt, which was owing by the community estate at the time of the death of Mary C. McNatt, and that this has been renewed and extended over a period of many years by the surviving husband, J. C. McNatt, and that as such survivor he had the right to renew and extend such indebtedness and to give the deed of trust lien, relied upon by the bank, to secure the same. But the jury has found that no part of the indebtedness sued upon by the bank represents such extension or renewal of a community debt. We believe that the jury had the right to so find under the record presented to us. It is not sufficient for J. C. McNatt, the survivor, and C. C. McNatt, his son, who had been his partner for many years before Mary C. McNatt's death and was at the time this suit was filed, to simply testify generally that they owed the City National Bank sums of money largely in excess of the notes here sued on, and that such notes represent the renewals and extensions of this old balance, which, at that time, of necessity, was more than ten years old. And when the issue was sharply drawn, it became necessary, in the face of the living facts, to produce testimony that would prove such renewal and extension. This was not done. Let it be remembered that from the death of Mrs. Mary C. McNatt, on May 5, 1923, continuously up to and until the City National Bank closed its doors, in 1930, J. C. McNatt and C. C. McNatt were actively operating as partners and dealing with said defunct bank.

For the purpose of showing that the notes sued on are the mere extensions of such community indebtedness, four notes were introduced in evidence before the court and jury. The first note is dated August 1, 1930, payable February 1, 1931, to the City National Bank, for $3,468. It is signed by J. C. McNatt and C. C. McNatt. There is no notation on this note showing that it was a renewal of any prior indebtedness owing by either J. C. McNatt or C. C. McNatt. The second note, for $1,495, is also dated August 1, 1930, payable February 1, 1931. The third note is dated August 1, 1930, for the principal sum of $1,979.65, and is payable February 1, 1931. The second and third notes are signed just as the first and contain no notation or intimation that they were given in renewal of any indebtedness. The fourth note is also dated August 1, 1930, for the sum of $915, payable on February 1, 1931, and is signed, "J. C. McNatt & Son, J. C. McNatt, C. C. McNatt," and no notation or intimation is made in this note that same is in renewal of any prior indebtedness. One notation appears on each of these four notes, and it is: "Renewed, 6–20–31." Thus it is seen that these notes aggregate $7,857.65, and it is certain that these are the notes which were renewed by the $7,500 note sued upon by the plaintiff in error bank in this cause.

The evidence having failed to show that notes were in existence at the time of the death of Mary C. McNatt, aggregating $7,500, and the renewal and extension thereof during all the seven years and more that intervened between the death of Mary C. McNatt, on May 5, 1923, and the extension of the four notes above mentioned, on August 1, 1930, and the further fact that J. C. McNatt and C. C. McNatt were operating as partners during all

those years, and continued to deal with the creditor bank up to its closing in 1930, and the further fact that it was to the interest of J. C. McNatt and C. C. McNatt to contend that all this indebtedness owing by them in 1930, and still owing, is community indebtedness, in order that they might subject the entire community property to the payment of their partnership debts, was evidently carefully considered by the jury, and the burden being upon the holder of the notes to establish that this was a community debt, the jury concluded that no such burden was discharged.

The first assignment of error complains of the refusal of the court to give the bank's requested peremptory instruction.

The second assignment of error complains of the trial court overruling the bank's exception to issue No. 1.

The third assignment of error complains of the overruling of the bank's exception to special issue No. 2.

The fourth assignment of error complains of the overruling of the bank's motion for "judgment non obstante veredicto, to the effect that the debt sued upon by the defendant bank was a community debt of J. C. McNatt and wife, Mary McNatt."

The fifth assignment of error complains of the trial court rendering judgment that the indebtedness sued upon by the bank was not a community debt of J. C. McNatt and wife, because the evidence is insufficient to support such judgment, and the testimony of J. C. McNatt and C. C. McNatt, that it is a community debt, is undisputed and uncontradicted.

We overrule the first assignment of error because the issue of whether or not the debt sued on was a community debt, which had been renewed from time to time, was raised by the evidence, and the bank was not entitled to a peremptory instruction, for that reason and for yet another which will be noted later.

■■ The second assignment of error is too general to give the court the point raised, and it is not supported by a proposition showing how or why the trial court committed error in overruling the bank's exception to special issue No. 1. The same criticism is applicable to assignments Nos. 3 and 4.

There is no merit in the fifth assignment of error, for the reasons given in our discussion of the first assignment of error.

There being facts and circumstances developed in the trial from which the jury could very properly find that no part of the notes sued upon represents a community debt owing by J. C. McNatt and wife, at the time of the wife's death, and the burden of establishing the existence of such debt and its extension and renewal in the notes sued upon not having been met, in the judgment of the jury, the court has properly rendered judgment denying the existence of such community debt.

■ The sixth assignment of error is too general to disclose the point raised and it is not supported by a proposition showing how or why the trial court erred in overruling the bank's exception to issue No. 3.

The seventh assignment of error is subject to the same criticism made of the sixth.

The eighth assignment of error is subject to the criticisms made of the sixth and seventh.

■■ There is no merit in the ninth assignment of error, which asserts that the trial court erred in refusing to give the bank a peremptory instruction because the defense raised by the plaintiffs, predicated upon the agreement made with Hutchison, president of the creditor bank, was unnecessary and mere surplusage.

This is true because under the evidence and pleading the jury has properly found that the bank's debt is no part of the community indebtedness owed by J. C. McNatt and his deceased wife.

But, had the jury not found such facts, the assignments of error would be without merit, because we believe that under all the facts and circumstances shown the president of the creditor bank had the authority to make the agreement relied upon and to compromise and settle the community indebtedness in the manner alleged and found by the jury.

Let is be remembered that J. C. McNatt and C. C. McNatt had been partners for several years before the death of Mrs. Mary C. McNatt; that they were actively operating then as partners and expected to continue to so operate, and to deal with the creditor bank, and did do so; that a large portion of the estate of J. C. McNatt and Mary C. McNatt was encumbered with liens and that the said bank had none, except such inferior statutory lien; and that J. C. McNatt was entitled to a homestead

right in the estate; that Mrs. McNatt had been dead for about five years, and no administration of any kind was had upon the estate; that all of the surviving children were of age, and the issue of limitations against the bank's debt and lien could be urged against the creditor bank; that C. C. McNatt was in a position to claim a homestead right in the estate inherited from his deceased mother. All these matters, facts, and circumstances were wholly sufficient to warrant the president of the creditor bank to make the agreement found to have been made, whereby the bank received about one-half of the debt jointly owed by J. C. McNatt and C. C. McNatt, in cash, and to continue to deal with J. C. McNatt and C. C. McNatt as partners, in the hope of ultimately collecting its entire debt.

The tenth assignment of error is to the effect that the court erred in overruling the bank's exception to special issue No. 8.

This issue asked the jury to find whether or not the 160-acre tract, known as the "north place," was paid for in whole by the separate estate of Mary C. McNatt. The jury answered, "No," but in answer to the next issue found that same was partly paid for by such funds.

The issue was raised by the pleadings, and a careful investigation of the statement of facts discloses that the testimony and evidence is sufficient to raise the issue. The contention that the evidence is insufficient is not well taken.

The answer to issue No. 8 was favorable to the bank, and no injury has been shown in the submission of such issue.

There is no merit in the eleventh assignment of error, which complains of the trial court not giving the bank's peremptory instruction "because there is no evidence that the property designated as the 'north place' was the separate property of Mary C. McNatt."

The peremptory instruction was not warranted under the facts adduced, even if there had been no evidence raising the issue of such separate estate.

The twelfth, thirteenth, fourteenth, and fifteenth assignments of error are without merit, because there was sufficient evidence and testimony before the court and jury to raise the issues submitted—being issues Nos. 8, 9, and 10—and we will not say that the oral testimony and documentary evidence before the jury is insufficient for the jury to find, as they did, that $675 of the separate funds of Mary C. McNatt went into the 160-acre tract.

The deed to this tract of land recites $250 cash paid, one note for $175, and the assumption of a note for $500. The jury weighed the testimony concerning the receipt of separate funds belonging to Mrs. Mary C. McNatt, and the alleged statements of J. C. McNatt concerning what he did with such funds, and from such evidence made the finding complained about. We do not think we are authorized to disturb the finding.

It follows that the sixteenth and seventeenth assignments of error, dealing with the issue of such separate funds, are without merit.

The eighteenth assignment of error complains of a portion of the closing argument made by a counsel for the plaintiffs.

The assignment simply asserts that it is "an appeal to the prejudice and sympathy of the jury." Nothing in the assignment of error purports to show how, or why, the argument could have or did influence the jury in rendering their verdict on any issue. No complaint was made of the argument at the time it was made. The qualification placed upon the bill of exceptions shows that the argument was made in reply to arguments theretofore made by counsel for the bank. The assignment of error does not set forth the entire argument made by opposing counsel, in relation to the matter being argued. The argument actually made was addressed to the fact that the bank's evidence did not connect the notes sued upon with the community indebtedness owed by J. C. McNatt and his deceased wife.

The bill of exceptions is insufficient to show that any injury was even probably done by the argument.

The two propositions brought forward under the assignment of error are not sufficient to show error committed by the trial court.

The nineteenth assignment of error is in very general terms and therefore requires a proposition, or propositions, to show how or why the overruling of the bank's special exception was error.

The proposition supporting same simply complains that certain allegations in plaintiffs' pleading were "immaterial, irrelevant

and prejudicial." No effort is made to show how or why this is true.

But no issue was submitted to the jury covering the matters complained of, and we do not see that any injury followed the allegation, or that the erroneous overruling of an exception to such allegation warrants a reversal of the judgment.

The twentieth assignment of error is without merit for the reasons stated as to the nineteenth.

The twenty-first assignment of error complains that the trial court overruled the bank's "exception contained in paragraph 5–A of defendant bank's Exceptions and Supplemental Answer."

We do not believe that this general assignment should be considered, but taking the supporting proposition as fully explanatory of the matter complained of, we find that it simply raises the question of the oral agreement made between the president of the City National Bank and the plaintiffs as being within the statute of frauds and unenforceable.

We do not think such oral agreement subject to the exception urged, and the contention is without merit.

There is another cogent reason why the judgment of the trial court should be affirmed. No administration was had, after the death of Mary C. McNatt, on May 5, 1923. The creditor bank sought none, and the survivor, J. C. McNatt, did not qualify as such survivor.

Article 3664, Rev.Civ.Statutes, requires that the surviving husband shall "within four years after the death of the wife * * * when there is a child or children, file a written application in the county court," etc.; article 3665 provides for the appraisers; article 3666 provides for the inventory and appraisement; article 3667 provides for the bond by the survivor; article 3668 provides for the action of the county court on such proceedings; article 3669 gives the right of control to the survivor of the community estate; article 3670 requires the survivor to keep a strict account of all community debts and expenses paid by him and of the disposition made of the community estate, etc.; article 3672 requires the survivor to pay all *just and legal* community debts as soon as practicable. (Italics ours.)

The succeeding articles provide for the rights of creditors, and article 3681 provides that the persons entitled to the deceased's share of the community shall be entitled to have a partition and distribution thereof "after the lapse of twelve months from the filing of the bond by the survivor."

We are fully aware of the fact that even without any administration of any kind the surviving husband may, where the facts warrant such action, sell the community estate to pay lawful community debts; or renew and extend community debts, and even existing liens on community property.

But we desire to make it plain that we believe these powers and rights must be exercised within a reasonable time after the death of the spouse, and that it be made to appear that such action taken by the surviving spouse was necessary for the preservation, or protection of the community estate. This may be for the benefit of the estate, or for the protection of the survivor.

But we do not believe that in such a case as we have before us—one in which it is shown that the surviving husband had been engaged in a partnership undertaking with his son, for years before his wife's death, and up and until her death, and which partnership continued long after her death, and is now in existence—the survivor, without qualifying as community survivor, and without any kind of administration of the deceased wife's estate, can, more than eight years after the death of his wife, make a note which he claims is a renewal of the balance of a community debt owed by him as a partner with his son, at the time of his wife's death, and give an express lien on all the community property to secure same, and thereby prevent his children (the heirs of his deceased wife, all of whom were of age when she died) from raising the issue of limitations as affecting their rights in the community estate inherited from their mother.

To so hold opens the field for the perpetration of a fraud against the surviving children, whereby the father could, without regard to such children's rights, completely wipe out the estate, inherited by the children, for his personal benefit and the protection of his personal obligations.

We hold that in this case, under the facts before us, the surviving father was without authority to attempt the so-called renewal of the community debt, at the late

hour in which such renewal was attempted, and to bind the surviving children's interest to pay such debt, and that the plea of limitations was well taken, even if the evidence had established the bona fides of the transaction.

The interest of the deceased mother vested in these children—all of whom were of age—immediately upon her death. The surviving father held this estate in trust for his children. He could not, without their express consent, renew a debt against the community that was barred by the statutes of limitation, under the facts shown in this case, and give without their joinder and consent a lien upon their portion of the community estate, to secure the payment of such renewed debt—even if it had been shown to be a just charge against the community estate at the time of the wife's demise.

Justice demands that there be some limitation upon the right of the surviving husband to so continue in existence a debt against the community as against the rights of the children of the deceased spouse to raise the issue of laches and stale demand, on the part of the community creditor.

It is certain that neither an administrator nor an executor can allow a claim against an estate that is barred by limitation, and bind the heirs for the payment thereof. Hudson v. Hutchinson (Tex.Civ. App.) 41 S.W.(2d) 1013; Sabrinos v. Chamberlain, 76 Tex. 624, 13 S.W. 634; Moore v. Hillebrant, 14 Tex. 312, 65 Am. Dec. 118.

The notes introduced in evidence, which are claimed to be renewals of the community debts, owing by the community estate when Mrs. McNatt died, on May 5, 1923, are all dated August 1, 1930, more than seven years after the death of Mrs. McNatt. No notes were exhibited showing renewals from May 5, 1923, down to August, 1930.

On the face of the notes relied upon, the statute of limitations is shown to have run for more than seven years, after Mrs. McNatt died.

If a qualified executor, or administrator, cannot allow a barred claim, how much more cogent is the argument that a mere community survivor, who has not qualified as such, cannot revive a barred debt, as against the rights of the lawful heirs, in such a case as is brought before us?

Here, the entire community estate is sought to be subjected to the payment of a debt owing by the surviving husband and his partner, claimed to have been in existence at the time of the death of the wife, when, under the undisputed facts, such partnership continued to operate from the date of the wife's death up and until the date of the trial of this cause, and such partnership continued to transact business with the creditor bank, from the wife's death until such bank became defunct in 1930, seven years after her death.

Furthermore, no effort is made to show what indebtedness was incurred by such partnership between the wife's death and up to August 1, 1930; and no effort is made to show what sums of money were paid to such bank between those dates, by the partnership.

Here, we find an effort upon the part of the surviving husband to renew a barred debt not only for the purpose of extending the debt owed by the community, but to secure such debt by a lien on the whole of the community to pay his debt and that of his partner.

And here we find that the debt so renewed and sought to be secured is, admittedly, the balance owed by such partnership on August 1, 1930, more than seven years after the death of the wife, and which partnership had been operating during all such time.

The record discloses that this is, in fact, an effort to bind the community for the payment of such a balance, and. to deny the community the benefit of the payments made to the creditor bank, during the period of seven years, after the wife's death, on the theory that such sum is what the community owed when she died.

The judgment of the trial court is affirmed.