## GORMAN v. GORMAN.
### No. 6109.

Court of Civil Appeals of Texas. Texarkana.
April 27, 1944.

Rehearing Denied May 18, 1944.

Jones & Jones, of Mineola, for appellant.
Beavers & Beavers, of Winnsboro, for appellee.

HALL, Chief Justice.

This is a suit for divorce instituted by appellant against appellee for division of their community property, both real and personal, and for custody of their two minor children under sixteen years of age. Appellee entered a denial of all allegations of appellant's petition and by cross action sought a divorce from appellant and custody of their two minor children. Appellee also alleged that most of the personalty and all the real property belonged to his separate estate.

Trial to the court without a jury resulted in judgment granting to appellant a divorce, awarding to her the care and custody of their two minor daughters, aged ten years and one year; decreeing to appellant the sum of $37.50 per month for the support and maintenance of each of the two minors, adjudging to appellant certain household goods and the automobile, and the sum of $2688.80 as her remaining interest in the estate of her and appellee. The court awarded to appellee certain of the personal property, two tracts of land, one containing 33 acres and the other containing 266 acres, and charged him with the payment of all community debts.

Appellant asserts that the trial court erred in holding the real estate to be the separate property of appellee for the rea-

son that both tracts of land were acquired during the marriage and that the sole consideration paid for said land consisted of vendor's lien notes. The only serious controversy in this case, as shown by the briefs of both parties, is with respect to the status of the two adjacent tracts of land, both of which were conveyed to appellee by his father, Will Gorman, during the marriage of appellant and appellee, and each conveyance reciting as the total consideration certain vendor's lien notes. It is appellee's contention that it was the intention of the parties to the deeds conveying the two tracts of land that the property should be his separate property, that the consideration evidenced by said notes was to be a charge against his separate estate, and that said notes were actually paid by funds inherited by him from the estate of his mother and father.

Appellant and appellee were married in 1920. The 33-acre tract of land, hereafter referred to as the small tract, was conveyed to appellee, Paul Gorman, by his father in August 1922, before the death of Paul's mother in December of that year, and recited as the total consideration:

"One note executed by said Paul G. Gorman, of even date herewith, for the sum of $1320-00, and due November 1st, 1932, and bearing interest from the date hereof until paid at the rate of 6 per cent per annum, said interest payable annually * * *."

The 266-acre tract of land, hereafter referred to as the large tract, was conveyed to appellee by his father in 1937, before his father's death in 1939, and recited as the total consideration a "promissory vendors lien note of even date herewith for the sum of Six Thousand Six Hundred Fifty and no/100, bearing interest from date at the rate of 3 per cent per annum, interest payable annually, and said note due on December 1st, 1947." The dwelling house in which appellant and appellee resided was located upon the small tract. The construction of this house was begun a short time before the marriage of appellant and appellee, was completed a few weeks after their marriage, and was immediately occupied by them as their home. The beginning of their occupancy of the small tract was some two years before the title was actually conveyed to Paul. During the existence of the marriage, cattle barns, milk houses, and other improvements such as fences, shrubbery, and fruit trees were placed upon the two tracts of land. Appellee, Paul Gorman, and his father were partners in the cattle business from before Paul's marriage in 1920 until his father's death in the early part of 1939. It appears that the father furnished the money for the partnership. He kept the books and charged Paul's account with 1/2 the amount so furnished and credited his account with 1/2 the amount realized from the sale of the partnership cattle. In addition to financing the partnership, the father furnished the money with which to build the dwelling house and other improvements upon the land. Paul and appellant, his wife, also constructed some of the improvements upon the land with their own funds. On the date of the death of Paul's mother he was indebted to his father, as shown by his father's account book, in the sum of $6321.50. This amount included the purchase price for the small tract of land. The father purchased Paul's interest in the mother's estate for $6331.50, which amount was credited to Paul's account. The record shows further that in 1925 Paul received $900 as his portion of insurance from his deceased brother, which was also applied by the father on appellee's account. In the early part of 1939 Paul's father died, and in 1940, a settlement and division of the father's estate was had which showed that Paul owed the estate $10,406 which included the $6650 note given as the purchase price for the large tract and the balance of $315 due on the purchase price of the small tract. Paul's interest in his father's estate amounted to $7682.94 which was credited to his indebtedness owing the estate.

The trial court found: "That no part of the community funds or property belonging to plaintiff (appellant) and defendant (appellee) were used in paying for the land described in plaintiff's petition and in defendant's cross action; that all amounts ever paid for said land were paid out of defendant's separate estate." With respect to the status of the small tract of land the trial court found:

"That prior to the marriage of plaintiff and defendant, defendant's father Will Gorman had agreed to sell to defendant and defendant had agreed to buy from his father the 33 acres tract of land, that in reliance on said agreement the defendant went into possession of said land and constructed valuable improvements thereon prior to said marriage; that in compliance with said agreement defendant's father

did execute and deliver to defendant a valid deed of conveyance conveying said 33 acres, said deed being dated August 15, 1922 (after the marriage of plaintiff and defendant) said land being so conveyed to the defendant as his separate property, it being the intention of the parties at the time the agreement to purchase to enter into and at the time of said deed that said land should be the separate property of defendant's; that said deed recites a consideration of $1,320.00 evidenced by defendant's Vendor's Lien Note for said amount due November, 1st, 1932; that it was understood that said note was to be paid out of defendant's separate estate and said note was paid out of defendant's separate estate. * * *"

Concerning the large tract, the trial court made the following findings:

"* * * conveyed to defendant by his father, by deed dated December 1, 1937, was conveyed to him, as an advancement against his interest in his father's estate; that at the time of said conveyance his father wanted defendant to have that particular tract for pasturage purposes and he placed a value on said of $6,650.00 and took defendant's note for the amount due December 1, 1947, in order that an accounting could be between his heirs, after his death, without a question as to the value of the land being involved; that he did not expect said note to be paid, other than out of defendant's said inheritance; that it was the intention of the parties at the time of said conveyance that said land should be the separate property of the defendant. That defendant's father died January 24th, 1939, prior to the maturity date of said note; that in the settlement of his father's estate between the latter's children, the defendant was credited with $8,106.00 and he owed his father's estate at that time of said settlement, the sum of $315.00 as balance on the $1,320.00 note, and the sum of $3,441.00, making a total of $3,756.00 in addition to the value of said 266 acre tract represented by the $6,650.00 note; that in the settlement of said estate the defendant received no cash, but the said indebtedness of $3,756.00 was canceled, and $4,350.00 was credited on said $6,650.00 note leaving a balance of $2,300.00 which has never been paid;"

The presumption is that realty acquired during marriage is community property. R.S. Article 4619, Vernon's Ann. Civ.St. art. 4619; Reed v. Benjamin State Bank, Tex.Civ.App., 114 S.W.2d 365, error dismissed. Generally speaking, realty acquired on credit of the community estate becomes community property unless there is an agreement or understanding between the seller and the buyer at the time of the purchase that the property is to be the separate estate of the husband or wife and that his or her separate estate will be looked to alone for the satisfaction of such deferred indebtedness. Foster v. Christensen, Tex.Com.App., 67 S.W.2d 246; Solether v. Trinity Fire Ins. Co., 124 Tex. 363, 78 S.W.2d 180; Gleich v. Bongio, 128 Tex. 606, 99 S.W.2d 881. In the recent case of Price v. Service Bureau, Inc., Tex. Civ.App., 165 S.W.2d 794, 796, error refused for want of merit, it is said:

"* * * Where deferred payments of all or a portion of the consideration are provided, it still becomes the separate property of one or the other if the cash payment, if any, is paid out of his, or her, separate estate and it is agreed at the time by all of the parties to the deed that the deferred portion of the purchase price shall be paid out of his, or her, separate funds and that they alone shall be held responsible for the discharge of the deferred payments."

It is our opinion that the record herein amply supports the findings of the trial court copied above. The status, therefore, of the title to the two tracts of land, under the facts as found by the trial court, is fixed by the rule of law announced in the authorities cited above and became the separate property of appellee.

By her 9th point appellant asserts that "when the husband so conducts his business that he commingles his separate property with the community property to the extent that it is impossible to separate said funds, all of said property becomes community property as a matter of law." This point states a correct proposition of law. Hamilton-Brown Shoe Co. v. Lastinger, Tex.Civ.App., 26 S.W. 924; Ralls v. Ralls, Tex.Civ.App., 256 S.W. 688. But, in our opinion, the evidence in this record fails to show a commingling of appellee's separate funds with the community funds. The evidence without dispute reflects that every penny of appellee's separate funds were applied to the payment of his indebtedness, both community and separate, as soon as said funds became available. They were not deposited by him, or by any one for him, to his credit in any bank

in the same account in which he kept his community funds. The record reflects that two of the three items of appellee's separate estate, namely, his inheritance from his mother's estate and his share in his brother's insurance, were, by his father, credited to appellee's account with the father; and the third item, his interest inherited in his father's estate, was, by the executor, credited on Paul's account with the estate. It is only when the separate funds are so mixed with the community funds that the separate funds cannot be traced accurately that it loses its identity and becomes part of the community. Such is certainly not the case here. No part of the items of appellee's separate estate that came to him by inheritance was paid to him, but, as said before, it was, by other parties who held his account, credited to appellee's account. It cannot be said that there was such commingling of appellee's separate estate with that of the community as to make it impossible to trace the separate estate. This point is overruled.

What we have said with respect to this last point, in our opinion, sufficiently answers appellee's contention advanced by certain cross-assignments.

We have examined all other points advanced by appellant and they are without merit and therefore are overruled. Viewing the record as a whole, the trial judge, in our opinion, has reached an equitable solution of a difficult case.

The judgment of the trial court is affirmed.