**EDSALL v. EDSALL.**

No. 2846.

Court of Civil Appeals of Texas.
Eastland.
March 23, 1951.

Rehearing Denied May 4, 1951.

Wm. Andress, Jr., Dallas, for appellant.

L. D. Hawkins, Breckenridge, E. G. Thornton, E. H. Griffin, Olney, for appellee.

COLLINGS, Justice.

This is a divorce case brought by appellant, Lucile Edsall, against appellee, Arthur B. Edsall. Upon a trial before the court without a jury, judgment was entered granting appellant a divorce and decreeing the status and division of the property. The basis of Lucile Edsall's complaint on this appeal is the manner of the division of the property.

The parties were married on July 12, 1939 and lived together as husband and wife for about ten years. No children were born to the union. At the time of the marriage, Arthur B. Edsall owned 1,290 acres of land on which he owed about $3,000.00, his community interest in about 180 cows, bulls and calves which had belonged to him and his deceased first wife, and various farm implements, tools and supplies, including a new Chrysler automobile.

In the first point presented by appellant, it is contended that the court erred in not holding three tracts of land acquired during the existence of the marriage relationship by deeds which did not recite that the tracts acquired were the husband's separate property or that they were paid for by his separate funds, were community property.

Property purchased during the marriage relationship is presumed to be community property and the burden of proving the contrary rests upon the party asserting such fact. Wilson v. Wilson, Tex.

Civ.App., 200 S.W.2d 258; Lindemood et al. v. Evans, Tex.Civ.App., 166 S.W.2d 774 (Writ Ref.); Gibson v. Gibson, Tex. Civ.App., 202 S.W.2d 288; Davis v. Duncan, Tex.Civ.App., 102 S.W.2d 287; Epperson et al. v. Jones et al., 65 Tex. 425; Hardee, Sheriff, v. Vincent, 136 Tex. 99, 147 S.W.2d 1072.

The status of property so acquired during marriage relationship is fixed by the facts of its acquisition at the time thereof. Smith et al. v. Buss et al., 135 Tex. 566, 144 S.W.2d 529, and cases there cited.

Ordinarily, the presumption that property acquired during marriage is community is overcome by showing that it was paid for at the time of its acquisition out of the separate estate of either the husband or wife. Boyd et al. v. Orr, Tex. Civ.App., 170 S.W.2d 829.

The status of money borrowed during the marriage relationship is determined by the intention to re-pay out of the separate funds of the husband or wife or from their community fund. 23 Tex.Jur., 127; Blair v. Teel, Tex.Civ.App., 152 S.W. 878 (Writ Ref.).

The facts which determine the status of the property may be proven as any other fact by any competent evidence, including parol evidence, surrounding circumstances and declarations of the parties. Foster v. Christensen, Tex.Com.App., 67 S.W.2d 246.

The first tract of land in controversy is a 100 acre tract acquired by appellee, Arthur B. Edsall on March 3, 1941, by deed from his son, Arthur Ben Edsall, Jr., and wife. The material facts concerning the acquisition of such tract are as follows: Ray Edsall, appellee's brother, owned 295 acres of land which Arthur Ben Edsall, Jr., appellee's son by a former marriage, desired to purchase but was unable to do without securing a loan upon said property. Ray Edsall was unwilling to sell the land on credit or to wait upon the proceedings required by the loan to get his money. On February 28, 1941, appellee borrowed $3,700.00 from The First National Bank in Throckmorton and signed a note

therefor. From this loan he paid his brother, Ray Edsall, $3,639.60 and received a deed to the 295 acres, which deed is dated January 21, 1941, but was not acknowledged by Ray Edsall's wife until April 8, 1941. The instrument recites a consideration of $3,750.00 cash paid and contained no recitation that such consideration was paid from the separate funds of Arthur B. Edsall nor did the deed recite that the land was conveyed to him as his separate property.

By a deed dated and acknowledged March 3, 1941, appellee and appellant conveyed this same land to his son, Arthur Ben Edsall, Jr., for a recited consideration of $3,750.00 of which $1,250.00 was cash and the balance represented by a note in the sum of $2,500.00 payable to appellee, Arthur B. Edsall, on or before September 3, 1941. There was no recitation in this instrument concerning the status of the land, the money received or the note payable to appellee. On the same day, March 3, 1941, Arthur Ben Edsall, Jr. and wife, conveyed to Arthur B. Edsall the 100 acre tract of land in controversy reciting a consideration of $1,250.00 cash, but there was no recitation in the deed concerning the status of the property conveyed. Appellee's bank statement shows that on June 9, 1941, he deposited $2,280.00 in The First National Bank of Olney and on June 17, 1941, he deposited $227.00 or a total of $2,507.00 in such bank. Appellee testified that such amounts were paid to him by the Olney Federal Land Bank Association on behalf of his son, and were in payment of the balance due on the purchase price of the 295 acre tract.

On March 7, 1941, appellee, Arthur B. Edsall, executed a deed by which he sold a house in Olney, Texas which he had inherited from his mother for $4,000.00. He deposited such amount in a bank account carried in his name in The First National Bank at Olney. At the time of and immediately prior to the deposit of the proceeds from the sale of such house, he had on deposit in such bank the sum of $34.95. On the same day he drew a check on The First National Bank at Olney and paid The First National Bank at Throckmorton the

sum that he had borrowed in order to pay his brother Ray for the 295 acre tract of land.

The finding of the court concerning such 100 acre tract was as follows: "The court finds that 100 acres of land described * * * was acquired during the time of the marriage, but was acquired wholly by the expenditure of the separate funds of the defendant, Arthur B. Edsall. The Court finds that this 100 acres of land was acquired on March 3, 1941, from Arthur Ben Edsall, Jr., a son of the defendant, and for a consideration of $1,250.00. That shortly before March 3, 1941, the defendant purchased from his brother, Ray C. Edsall, 295 acres of land, and that such purchase was made on behalf of his son, Arthur Ben Edsall, Jr., and as a matter of convenience. The 295 acres was acquired for a cash consideration of $3,639.40 and was paid by a check drawn on The First National Bank of Throckmorton, Texas, dated February 28, 1941. On February 28, 1941, the defendant borrowed from said bank the sum of $3,640.00, and this money was used in paying for the 295 acres of land. The $3,640.00 loan was repaid to said bank from the sale of a house and lot in Olney, which was the separate property of the defendant, being owned by him long prior to his marriage to plaintiff. The Olney house was sold for a cash consideration of $4,000.00, which said amount was deposited in The First National Bank, Olney, Texas, on March 7, 1941, there being at such time on deposit in said bank to the credit of the account the sum of $34.95. On March 9, 1941, a check for $3,640.00 with accrued interest was drawn on the account at the Olney bank, and the debt to the Throckmorton bank hereby paid. Shortly thereafter, the defendant and his wife conveyed the 295 acre tract of land to the defendant's said son, and in return the said son and his wife conveyed to the defendant the particular 100 acres of land in question for $1,250.00, and an arrangement was made whereby an additional sum was paid to the defendant from the proceeds of a loan placed upon land owned by the son, shortly theretofore sold to a man by the name of Manuel. The Olney Federal Land Bank Association paid to the defendant $2,507.00, which was the additional sum agreed upon by the defendant, and his said son. This sum of $2,507.00 thus received by the defendant and paid to him at the direction of his said son, plus the 100 acres of land deeded to the defendant by his said son, valued at $1,250.00, was in full payment of the 295 acres of land theretofore deeded by the defendant and his wife to the said son."

In our opinion such findings of fact are supported by the evidence and the 100 acre tract in question became the separate property of appellee, Arthur B. Edsall at the time it was acquired by him. Appellee borrowed the money to pay for the 295 acre tract and repaid the loan with funds derived from the sale of separate property. Under authorities hereinabove cited, if he had the intention at the time he borrowed such purchase price and bought such tract to repay same with his separate funds, then such 295 acre tract became his separate property. The evidence fully justifies the conclusion that appellee had the intention to so repay the loan from separate funds. There can be no question but that a portion of the value of the 295 acre tract ($1,250.-00) was the full consideration for the purchase of the 100 acre tract.

A tract of approximately 65 acres (64.88) acquired by appellee from Mrs. Patti Anderson on February 5, 1947, is also in controversy and the material evidence concerning the acquisition of this tract is as follows: The deed by which the tract was acquired recited a consideration of $1,946.46 and there was no recitation that such sum was paid from appellee's separate estate. The evidence justifies the conclusion that the consideration consisted of $1,660.00 derived by converting into cash two war bonds and by securing a loan of $300.00 from appellee's brother, Ray C. Edsall. Appellee testified that the two bonds were purchased with $1,500.-00 paid by a check on The First National Bank in Olney on June 12, 1941, and was part of the money paid to him for his son by the Olney Federal Land Bank Association, as hereinbefore set out. In our opinion the evidence justifies the finding of the

court to the effect that the source of this money may be traced to the sale of appellee's house in Olney for a cash consideration of $4,000.00. The additional $160.00 received for the two bonds above the purchase price was interest and was community funds as was the $300.00 of borrowed money. Under these circumstances the court did not err in holding such 65 acre tract to be 3/4ths appellee's separate property and 1/4th community property.

■ The remaining land in controversy is an 80 acre tract acquired on July 16, 1940, from appellee's son, Arthur Ben Edsall, Jr. by a deed which recited a consideration of $10.00 and other valuable consideration. The deed contained no recital as to whether the purchase money was from separate property or community funds, nor did it specify that the land was conveyed to appellee as his separate property. Appellee testified that the true consideration was $20.00 an acre or $1,600.00. He stated that such consideration was paid with 11 head of two-year old heifers of a value of $660.00 and the assumption of a $500.00 note which his son owed The First National Bank of Throckmorton, Texas. The above consideration was paid at the time of the receipt of the deed. The 11 head of cattle were found by the court, upon sufficient evidence, to be his separate property by reason of the fact that he owned them before his marriage. The assumption of the $500.00 note was found by the court to constitute a community obligation. The remaining $440.00 of the consideration for such tract was 8 head of cows valued at $55.00 each which appellee transferred to his son about two months after the execution and delivery of the deed.

It is to be noted that such 80 acre tract was acquired by appellee about one year after his marriage. It is undisputed that at the time it was acquired he delivered to his son the 11 head of cattle valued at $660.00 and that these cows were his separate property. It is likewise undisputed that the 8 cows delivered two months after the date of the deed were also appellee's separate property. This constituted a total of $1,100.00 of the consideration for such tract which came from appellee's separate

estate. This evidence, in our opinion, raised a question of fact as to whether the parties intended at the time of the conveyance that such portion of the total consideration as was later satisfied by the 8 cows should be paid from appellee's separate estate. If such was the intention, the same proportion of the tract purchased thereby became separate property. It is undisputed that such portion was so paid from the separate estate. In our opinion the court was justified under these facts in holding that such 80 acre tract was 11/16ths appellee's separate property and 5/16ths community property.

■ Appellant contends in her second point that a special bank account in the name of appellee in The First National Bank of Olney so commingled community and separate funds that all of it became community property and that the court erred in arbitrarily dividing such account between the parties. The amount of such bank account at the time of judgment was $2,074.00. It was found by the court and the evidence showed that such account consisted of a deposit of a bonus of $1,500.00 for an oil and gas lease on appellee's separate property and a bonus of $325.00 on the 65 acre tract above mentioned, and $449.00 for seismograph testing operations on appellee's separate property. The court held that since the 65 acre tract was 3/4ths separate property and 1/4th community property that $81.25 out of the oil bonus received therefrom was community property and that the balance of such bonus was appellee's separate property. The court further found that the $449.00 seismograph fee was community property which made a total of $530.25 of such account which represented community funds. The evidence further showed that $200.00 had been paid from such account, although the times of such payment is not shown in the record. Such expenditure was divided by the court by charging $100.00 to the community and $100.00 to the separate estate. After such deduction, $430.25 of the account represented community funds and the court found that the remaining portion thereof was the separate property of appellee, Arthur B. Edsall.

Although separate and community property were commingled in the special account, they were not so mixed that the separate funds could not be traced. The court was able to determine accurately the interest of each estate in the fund. Such separate funds had not lost their identity and become part of the community and the court did not err in dividing the account between the parties in the manner shown. Gorman v. Gorman, Tex.Civ.App., 180 S. W.2d 470; R. B. Spencer & Co. v. Green et ux., Tex.Civ.App., 203 S.W.2d 957.

Appellant's third point complains of the action of the court in finding that the debt of $300.00 due Ray C. Edsall for a loan which was used as a portion of the consideration for the purchase of the Patti Anderson land, was a valid and outstanding obligation against the community estate. It is undisputed that Ray C. Edsall did, in 1947, loan appellee the sum of $300.00 as a part of the purchase price of such land. It is also undisputed that the loan was not evidenced by a writing of any kind until sometime in 1950, after the filing of this divorce suit when appellee signed a note for the indebtedness. Appellant contends that the obligation was barred by limitation before the execution of the note in 1950 by the two year statute of limitation, which applies to obligations not evidenced in writing. Appellant further contends that such debt could not, after the filing of suit, be revived as a charge against the community by a note voluntarily given by appellee to his brother. By executing such note appellee did not create a new debt. The debt was already in existence and was binding against both appellant and appellee in the absence of a plea of limitations. Appellant would have had the right to urge the statute of limitations against this claim in a suit brought against her by Ray C. Edsall. First National Bank of Bowie v. Phillips et al., Tex.Civ.App., 101 S.W.2d 319. We are of the opinion, however, that the court, in making a division of the property between the parties in a divorce case "in such a way as the court shall deem just and right" as provided by Art. 4638, Vernon's Annotated Revised Civil Statutes of Texas, had the power to charge such indebtedness against the community estate. The community estate was enriched by the making of this debt, and appellant benefitted thereby. The land purchased for $20.00 per acre had an agreed value of $45.00 per acre at the time of the divorce suit. There is no question but that appellee, Arthur B. Edsall, by signing the note and renewing the original oral promise to pay is now legally bound to pay the $300.00. Under the circumstances, we are of the opinion that the court did not abuse its discretion in charging such debt against the community estate. The equitable power of the courts in a proper case is indicated by the following authorities: 28 Tex.Jur., page 281; San Antonio & A. P. Ry. Co. v. Gurley, 92 Tex. 229, 47 S.W. 513; Republic Natural Gas Co. v. Huddleston, 120 S.W. 2d 319; Jones v. Jones, Tex.Civ.App., 211 S.W.2d 269, and cases cited.

During the period of separation of the parties and while this cause was pending in the trial court, appellant was, by order of the court, as agreed by the parties, paid $250.00 per month as alimony and appellee was allowed a drawing account of $100.00 per month. Upon a trial of the cause, it was found by the court that appellee incurred certain items of expense properly chargeable against the community estate. The amount received by appellant as alimony was found by the court to be $2,-200.00 more than the total amount received by appellee, including monthly allowances and expenses. The court charged appellant's interest in the community estate with $1,100.00 or one-half of such excess payments received by her.

Appellant's fourth point urges that such action of the court was error. Appellee contends that the court's action was a just balancing of the equities of the parties in a division of the property. An examination of the record clearly indicates that the allowances paid to appellant did not exceed her one-half of the income from the community estate. Under such circumstances the court did not abuse its discretion in charging such excess payments received by appellant against her own community interest. 15 Tex.Jur., page 647; Williams v. Williams, 60 Tex.Civ.App. 179,

125 S.W. 937 (Writ Dis.); Hughes v. Hughes, Tex.Civ.App., 259 S.W. 180; Bagby v. Bagby, Tex.Civ.App., 186 S.W.2d 702.

It was further found by the court that during the marriage relation $860.17 was spent for "insurance" and that $2,609.30 was spent for "farming repairs and supplies" and that such amounts were paid from community funds. It was further found by the court that the portions of such expenditures on property belonging to appellee's separate estate were not sufficiently segregated or itemized and the court concluded that such amounts were largely community obligations.

It is contended by appellee's fifth point that "when appellee husband legally in control of the community, failed to keep records sufficient to segregate amounts spent by the community for the benefit of his separate property from bona fide community expenditures, he was responsible for the commingling and his separate estate should be charged with the entire amount." We cannot agree with this contention. The burden rested on appellant to show that the amount of money from community estate spent for the repairs and insurance of appellee's separate property. Appellant was the party seeking reimbursement and carried the burden of proving the amounts she was entitled to be repaid. Speer's Law of Marital Rights in Texas, Third Edition, page 472; Lane v. Kittrel et al., Tex.Civ. App., 166 S.W.2d 763 and cases there cited; Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328.

It was agreed by the parties that during their marriage $7,967.22 was spent for mesquite eradication. All of such amount, except $145.10, was spent in 1947, 1948 and 1949.

Where community funds have been expended on the separate property of one of the parties to a divorce suit, the controlling factors in adjusting the property rights is the increase in value of such separate property by reason of the expenditures made as of the time of the trial. Puckett v. Puckett, Tex.Civ.App., 205 S.W.

2d 124; Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620; Clift v. Clift, 72 Tex. 144, 10 S.W. 338; Hillen v. Williams, 25 Tex. Civ.App. 268, 60 S.W. 997; Lynch v. Lynch, Tex.Civ.App., 130 S.W. 461 (Writ Ref.); 32 Tex.Jur., page 175.

The evidence was conflicting as to whether the value of appellee's land was increased by the expenditure of mesquite eradication. Some of the witnesses testified that the value of the land was increased and others testified that it was not. In this state of the evidence the trial court was justified in concluding that there was no increase in the value of the land and in denying a recovery by the community estate from appellee's separate estate for such expenditures. As contended by appellant, one of appellee's witnesses who testified that there was no increase in the value of the land did also state "the way this mesquite business is * * * the way I see it is to hold value * * * to hold the value you already have." Appellant urges that since this testimony was given by one of appellee's witnesses that appellee is bound thereby. She contends that since the effect of such testimony is that such expense was for the upkeep and preservation of the value of appellee's separate estate, that such estate should be required to reimburse the community estate for such expenditure. We cannot agree with this contention. The testimony referred to was simply the stated opinion of the witness which the court was not bound to accept. It remained a fact question for the court's decision. 19 Tex.Jur., page 40; International & G. N. R. Co. v. Mills, 34 Tex. Civ.App. 127, 78 S.W. 11 (Err. Ref.); National Life & Accident Co. v. Muckelroy et al., 40 S.W.2d 1115, and cases cited.

Appellant's seventh point complains of the action of the court in refusing her attorney's fee. It is contended that since the court held that appellant was entitled to a divorce that she is therefore also entitled to recover her attorney's fee as a necessity. The court found both parties guilty of cruelty but held appellee to be the greater offender and granted appellant a divorce.

Appellee urges that the record shows appellant to be a well educated woman, experienced as a school teacher, and that her part of the community is of the value of approximately $30,000.00 and that she is, therefore, well able to pay her own attorney's fee. It has often been held in this State that the trial court in divorce cases has the power to render judgment in favor of the wife for attorney's fees but the right to such attorney's fee is largely within the discretion of the trial court. 15 Tex.Jur., page 653; Wilson v. Wilson, Tex.Civ.App., 231 S.W. 830; Moore v. Moore, Tex.Civ.App., 192 S.W.2d 929; Roberts v. Roberts, Tex.Civ.App., 193 S.W. 2d 707; Walker v. Walker, Tex.Civ.App., 201 S.W.2d 61. Under the facts here presented, we cannot say that an abuse of discretion is shown by the trial court.

It was decreed that appellant and appellee each had an undivided one-half interest in the cattle, subject to the interest of Arthur Ben Edsall, Jr., as indicated in Cause No. 1376, and a Special Master in Chancery was appointed to supervise the division of such cattle. Cause No. 1376 was a suit in the same court brought against appellant and appellee by Arthur Ben Edsall, Jr., a son of appellee by a former marriage, in which the latter was held to have an interest in such herd of cattle.

The judgment in the case here under consideration which was filed on August 2, 1950, and numbered 1353 on the docket of the trial court, did not indicate the number of cattle in the herd nor did the judgment, in Cause No. 1376 which is also before this court on appeal, indicate the size of the herd. The findings of fact in Cause No. 1376 contained the statement that the herd consisted of 95 grown cows, 50 heifers, some with calves, and 6 bulls, or a total of 151. The action taken by the Master in Chancery is indicated in his original and supplemental reports thereafter made to the court. The following are portions of such original and supplemental reports dealing with the division of the herd which were made to the court in this cause:

"All cattle ordered divided by this Court in its judgments entered in said Causes No. 1353 and No. 1376 were produced before me on August 21, 1950, at the appointed hour and place, and all parties to such two Causes, and their attorneys, appeared before me for a division of said cattle. The entire herd of cattle covered in the judgments of this Court in said two Causes were then and there divided, by the process of alternate selection by such parties, among the parties entitled thereto, all in accordance with said judgments, with the exception of one bull; and it was agreed by all parties concerned, and by their attorneys, that your Master should sell such bull at auction and that the proceeds of such sale should be divided equally between the parties to Cause No. 1353." (Original report.)

"That it appears that your Master's Original Report, herein Filed on the 28th day of August, 1950, is inadequate in that it merely states, in Paragraph No. I thereof, that 'All cattle ordered divided by this Court * * * were produced before me', and does not specify the number actually produced. The herd of cattle produced before your Master, and which was actually divided as set forth in Paragraph No. I of your Master's Original Report, consisted of a total of 143 herd of cows and bulls, and 105 head of calves." (Supplemental report.)

The reports were approved by the court and in findings of fact made and filed by the court in this cause on September 18, 1950, it was found "that the herd of cattle in possession of the defendant at the time of the judgment entered herein is 143 head of cows and bulls and 105 head of calves, and as set forth by the amended report filed herein by the Master in Chancery."

It is contended in appellant's eighth point that since the undisputed evidence shows "that the herd consisted of 151 head, and it was so found in the companion judgment referred to in this judgment, there was no basis for the court's finding that the herd was only 143 head." We cannot agree with the contention that the evidence is undisputed and conclusive that the herd contained 151 head at the time of the judgment. An inventory taken December 31, 1949 did show 151 head, but it was appel-

lant's contention at the time of the trial that such inventory "insofar as the number of cattle * * * are concerned * * * are merely the best estimates * * * which can be made." One witness testified that he was on the Edsall ranch on March 20, 1950 and he thought he saw 141 cows, and he thought Mr. Edsall (appellee) said he had 145 cows on that date. Appellant testified that she thought the number of cattle on the place was between 200 and 325. The state of the evidence in our opinion, justifies the conclusion that the testimony of various witnesses as to the size of the herd was not intended by such witnesses or the parties litigant to represent an accurate representation of the number of cows and bulls on hand at the time of the judgment, but was rather an estimate which was intended to be made specific by the Master in Chancery at the time of the division. It is apparent that appellant anticipated that when an actual count was made the number would exceed 151 head.

It is true, as contended by appellant, that the court found in its findings of fact in Cause No. 1376 that there were 151 head of grown cattle in the possession of Arthur B. Edsall. This finding was made before the division of the cattle by the Master in Chancery. However, the Master in Chancery, purporting to act for the court in both cases, with all parties present, found only 143 head and divided only 143 head. There is no conclusive evidence showing that there was more than 143 head in the herd at the time of the judgment. In the absence of such a showing, we are of the opinion that there is no basis for holding the trial court in error on this point.

The judgment of the trial court is affirmed.

### On Motion For Rehearing

Appellant's motion for a new trial questions the correctness of several statements of fact contained in the original opinion. An examination of the record indicates two instances of error in our statement of the case. As urged by appellant, we were incorrect in stating that the judgment in cause No. 1376 which is also before this court on appeal, did not indicate the size of the herd of cattle. We did correctly state, however, that the findings of fact in cause No. 1376 indicated that the herd consisted of 95 grown cows, 50 heifers and 6 bulls. This finding corresponds with the provisions of the judgment in said cause and the erroneous statement is not such as to effect our holding on the point involved.

We also erroneously stated that the findings of fact made in the companion case were made prior to the division of the cattle by the Master in Chancery. The findings of fact in cause No. 1376 were made on August 31, 1950. The cattle were divided by the Master in Chancery on August 21, 1950. The original and supplemental reports of the Master in Chancery, excerpts of which are set out in our original opinion, were filed on August 28, 1950 and September 7, 1950, respectively. Such original and supplemental reports were approved by order of the court dated September 15, 1950, and filed September 19, 1950. The Master in Chancery, purporting to act for the court in both cases, with all parties present, found only 143 head of cattle and divided only 143 head. As previously indicated, we are of the opinion that there is no conclusive showing that there was more than 143 head at the time of the judgment in this case. The court approved the action of the Master in Chancery and that approval came on September 15, 1950 after the findings of fact in cause No. 1376, which were filed on August 31, 1950. The court still had power under its findings and the later action superseded the former.

Appellant's motion for rehearing is overruled and the judgment of the trial court is affirmed.